RICHARD L. BAKER, FOR HIMSELF AND ON BEHALF OF ALL THE
MEMBERS OF THE MOTORING PUBLIC OF THE STATE OF INDIANA
WHO DO OR MAY USE STATE HIGHWAY 46 IN VIGO COUNTY,
INDIANA, EAST OF RILEY, INDIANA *v.* AMERICAN
METAL CLIMAX, INC.

[No. 1-974A140. Filed March 16, 1976. Rehearing denied May 6, 1976.
Transfer denied October 5, 1976.]

446

*Hansford C. Mann, Mann, Mann, Chaney, Johnson & Hicks,* of Terre Haute, for appellant.

*G. Daniel Kelley, Jr., Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, *Tofaute & Spelman,* of Terre Haute, for appellee.

LYBROOK, J.—Plaintiff-appellant Richard Baker appeals from a judgment which partially modified a prior judgment in his favor against defendant-appellee American Metal Climax, Inc. (AMAX), presenting the following issues for review:

(1) Whether the trial court's conclusion that AMAX had authority to construct a lateral railroad across public roads and highways was supported by sufficient special findings.

(2) Whether the trial court erred in concluding that the Public Service Commission (PSC) had jurisdiction to determine the merits of AMAX's petition.

(3) Whether the trial court acting through a successor judge committed reversible error in amending the previous trial judge's special findings without hearing evidence.

The record reveals that AMAX is an international mining company which operates Chinook Coal Mine in Clay and Vigo Counties. On January 31, 1973, AMAX filed a petition with the Public Service Commission of Indiana (PSC) for permission to build a "... PRIVATE RAILROAD SPUR TRACK AT GRADE ACROSS INDIANA STATE HIGHWAY #46 AND FIVE COUNTY HIGHWAYS IN VIGO COUNTY, INDIANA". On February 23, 1973, a hearing was held by PSC on the petition. On March 16, 1973, PSC issued its order directing AMAX:

"... to construct a private railroad spur track which will cross Indiana State Highway #46 and five county highways in Vigo County, Indiana, each at the location and in the manner set forth in the Amended Petition, subject however, to all applicable laws, rules, and regulations pertaining to the construction and maintenance of said spur track across the highways referred to in said Amended Petition. IT IS FURTHER ORDERED that Petitioner shall be, and it is hereby directed to construct and maintain at the crossing on Indiana State Highway #46 automatic highway crossing signals, flashing-light type, equipped with an automatic gong or bell, and to construct crossbuck warning signs at each of the county highway grade crossings. . . ."

Thereafter, in May, 1973, Baker learned for the first time of AMAX's proposed railroad and that it would cross public thoroughfares. Since the statute of limitations had expired, Baker was precluded from appealing the above order of PSC, but nevertheless, sought relief from the order in the Vigo Circuit Court. He filed a complaint for injunctive relief on June 12, 1973, seeking to enjoin the construction of the rail-

road. Supporting his request for relief, Baker alleged that the hearing and resultant order of PSC granting AMAX permission to establish grade crossings should be declared null and void due to defective notice. He also challenged the jurisdiction of PSC over AMAX's petition, maintaining that IC 1971, 8-4-10-1 (Burns Code Ed.) vested subject matter jurisdiction with the circuit court.

The lateral railroad which AMAX proposed was to aid in the operation of the Chinook Coal Mine. AMAX was in the process of constructing a new preparation plant and the new railroad was to provide transportation for coal from the new plant. The proposed railroad was to connect to an existing Penn Central line which in turn connects to the L & N Railroad.

Trial on Baker's complaint resulted in a judgment permanently enjoining AMAX from constructing the railroad in question. Thereafter, AMAX timely filed its motion to correct errors challenging *inter alia* the trial court's conclusion that PSC was without jurisdiction to entertain AMAX's petition. When the trial judge failed to rule on AMAX's motion within 30 days, the Supreme Court of Indiana, pursuant to AMAX's petition, appointed a successor judge to decide the matter. Without hearing additional evidence the new judge sustained AMAX's motion to correct errors in part and made the following entry:

"This matter having come before the Court on the defendant's motion to Correct Errors, and the Court having held a hearing on the same and having considered the briefs of the parties, the record of this cause, including the transcript of the evidence of the prior hearings, now finds that certain of the relief as requested in the Motion to Correct Errors should be granted and that the Findings of Fact, Conclusions of Law, and Judgment previously entered in this cause should be amended. The parties having heretofore agreed that the correct name of the sole defendant is American Metal Climax, Inc.

"The Court now states its reasons and the amended findings and conclusions of law as follows:

## FINDINGS OF FACT

1. Plaintiffs as a class are users of State Highway 46 and County Road in Vigo County, State of Indiana and seek to enjoin defendant from constructing grade crossings of public highways in the defendant's lateral railroad, on State Highway 46 and five (5) other county roads in Vigo County.

2. Defendant American Metal Climax, Inc., is a corporation organized under the laws of the State of New York and is admitted to do business within the State of Indiana, and it operates a strip coal mine in the State of Indiana.

3. On January 31, 1973, defendant filed an amended petition before the Public Service Commission of Indiana entitled 'AMENDED PETITION OF AMERICAN METAL CLIMAX, INC., A CORPORATION FOR PERMISSION TO CONSTRUCT A PRIVATE RAILROAD SPUR TRACK AT GRADE ACROSS INDIANA STATE HIGHWAY 46 AND FIVE COUNTY HIGHWAYS IN VIGO COUNTY, INDIANA', and a copy of the amended petition was served upon the Indiana State Highway Commission, the Board of County Commissioners of Vigo County and Penn Central Transportation Company, who were named as respondents in the amended petition.

4. A hearing before the Public Service Commission was scheduled for two o'clock P.M. on February 23, 1973 on the merits of said amended petition and the Commission notified The Indiana State Highway Commission, The Board of County Commissioners of Vigo County and Penn Central Transportation Company; and the Public Service Company of Indiana issued a notice by publication.

5. The notice which was published by the Public Service Commission on February 5, 1973, appeared in the Terre Haute Tribune, a daily newspaper published in Terre Haute, Indiana, and in the Terre Haute Star, a daily newspaper published in Terre Haute, Indiana; and in the Brazil Daily Times, a daily newspaper, published in Brazil, County of Clay, State of Indiana. Each of the aforementioned published notices contained the title of the petition as set forth above, the date of the hearing as being two o'clock P.M., EST, on February 23, 1973, and gave the place of the hearing as being before the Public Service Commission, Room 908, in 'atSte' office building, Indianapolis, Indiana, and invited public participation except that in the notice published in the Brazil Daily Times 'State' was correctly spelled. That none of said notices gave any street address

of the building where the said hearings were to be conducted.

6. That none of said notices gave any description of the roads or the area where said railroad crossings were to be constructed and that there are thousands of miles of roads in Vigo County.

7. On March 16, 1973, the Public Service Commission of Indiana issued its Order approving the construction of the grade crossings of the five (5) county roads in Vigo County and of State Road 46 and on July 19, 1973, the State Highway Commission approved the application for permit to construct a new railroad crossing across State Road 46.

8. Plaintiffs as a class and as users of State Highway 46 and the County Roads over which the grade crossings are to be constructed will suffer economic loss and inconvenience as a result of having to stop or slow down for said crossings and said crossings presents[sic] a potential hazard to the persons of the plaintiffs using said highways.

9. That the published notices of the hearing before the PSC as aforementioned were defective in that the county highways were not named, no descriptions or locations of the places of the crossings were set forth in the notices, and further the description of the State Office Building as being 'atSte' was insufficient in two of said notices.

## CONCLUSIONS OF LAW

1. That Defendant American Metal Climax, Inc., a corporation, is a mining company and has authority to construct a lateral railroad 'across public highways or roads.'

2. That the Public Service Commission of the State of Indiana had jurisdiction to hear and determine the merits of the amended petition of American Metal Climax, Inc., and to approve the grade crossings as requested, subject to proper notice being given to the public which notice should have included the name or other specification of each county road, and a general description of the location on the roads of the proposed grade crossings. The order issued by the Public Service Commission pursuant to the amended petition of American Metal Climax, Inc. of March 16, 1973, was void due to the defects in the published notices.

3. That plaintiffs are entitled to the injunctive relief requested until such time as the Public Service Commission re-hears or holds a new hearing after proper notice and

until such time as the Public Service Commission thereafter approves the grade crossings.

4. That the law in part is with the plaintiffs and against the defendants and plaintiffs are entitled to their costs and reasonable attorney fees in the amount of $1,000.00.

## JUDGMENT

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court that the defendant is hereby enjoined and prohibited from building the lateral railroad across the five (5) county roads of Vigo County and across State Highway 46 until a further hearing after proper notice is held before the Public Service Commission and until the Public Service Commission subsequently approves the grade crossing. . . ."

From the overruling of his motion to correct errors directed to this judgment, Baker appeals.

## I.

Baker's first issue concerns whether the following conclusion of law is supported by the findings of fact:

"1. That Defendant American Metal Climax, Inc., a corporation, is a mining company and has authority to construct a lateral railroad 'across public highways or roads.' "

Baker argues that the findings of facts were not sufficient to support this conclusion of law in that there were no findings that (1) the public highway and roads sought to be crossed intervene between AMAX's mine and any other railroad and (2) the lateral railroad as proposed would not exceed ten miles in length.

AMAX, however, argues that the trial court herein was not required to make special findings of fact under Ind. Rules of Procedure, Trial Rule 52. AMAX suggests that the trial court's ruling herein should be considered as a general finding and sustainable on any theory supported by the evidence.

The question of when a trial court is required to make special findings of fact is governed by Ind. Rules of Procedure, Trial Rule 52(A) which provides:

"(A) Effect. In the case of issues tried upon the facts without a jury or with an advisory jury, the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58. Upon its own motion, or the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury or with an advisory jury (except as provided in Rule 39[D]) shall find the facts specially and state its conclusions thereon. The court shall make special findings of fact without request

(1) in granting or refusing preliminary injunctions;

(2) in any review of actions by an administrative agency; and

(3) in any other case provided by these rules or by statute. . . ."

In the case at bar, neither Baker nor AMAX requested special findings. Therefore, unless this case falls within one of the three classes where the court is required to make special findings, the effect of the findings made herein is resolved by the following passage of *Hunter* v. *Milhous* (1973, 159 Ind. App. 105, 305 N.E.2d 448:

"Prior to Trial Rule 52(A) a 'volunteered' special finding by the trial court, i.e., a special finding without a request by either party, was considered a general finding. *Merchants National Bank & Trust Co.* v. *Winston* (1959), 129 Ind. App. 588, 159 N.E.2d 296. Rule 52(A), however, now authorizes the trial court to 'volunteer' special findings.

\* \* \*

"Prior Indiana law developed various rules concerning special findings upon less than all the issues. For example, all facts not contained in a requested special finding were regarded as not proved by the party having the burden of proof. *Korschot* v. *Leevy* (1961), 135 Ind. App. 411, 178 N.E.2d 750. Further, where no request for special findings were made, an 'amplified' finding was treated as a general finding and all special findings were disregarded. *Huber* v. *Huber* (1960), 131 Ind. App. 96, 164 N.E.2d 651; *Altmeyer* v. *Norris* (1954), 124 Ind. App. 470, 119 N.E.2d 31.

"But Trial Rule 52(D) allows a trial court to make specific findings on less than all the issues and a general finding which is determinative as to the remaining issues. Accordingly, all prior decisions which are inconsistent with the allowance of both general and spe-

cial findings when volunteered by a trial court have been superseded.

"The findings of the trial court in the instant case contain both a general finding and a special finding. Trial Rule 52(D) states that the special findings control only as to those issues covered by the special findings and that the general finding controls issues not covered by the special findings.

"When a general finding is made and the decision of the trial court is sustainable on any theory which the evidence supports, the reviewing court must affirm. *Indiana & Michigan Electric Company* v. *Schnuck* (1973), [260] Ind. [632], 298 N.E.2d 436; *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), [158] Ind. App. [311], 302 N.E.2d 816."

Having reviewed the evidence and the ruling of the trial court we conclude that this case does not fall within any of the three categories in which the trial court is mandated by TR. 52 to make special findings. It does not involve the granting or refusing of a preliminary injunction, but rather constitutes a final adjudication on the merits. The case at bar does not involve a review of an action of an administrative agency in a manner contemplated by TR. 52, rather, Baker is attempting to maintain a collateral attack on the ruling of an administrative agency (PSC). In our opinion, TR. 52(A)(2) requires special findings only on a direct review of administrative agency action and not in a case involving a collateral attack on such action.

Additionally, this case does not involve a situation where the rules of procedure or the statutes require special findings. Therefore, the rule of *Hunter* v. *Milhous, supra,* controls. The portion of the judgment above which reads ". . . now finds that certain of the relief as requested in the Motion to Correct Errors should be granted . . ." is, in our opinion a general finding in favor of AMAX.

We therefore conclude that the special findings are findings on less than all the issues and the general finding controls

as to all matters not covered by the special findings including Baker's argument concerning the trial court's conclusion that AMAX has authority to construct a lateral railroad across public highways or roads. Thus, if that conclusion is sustainable on any theory supported by the evidence we must so rule. *Hunter* v. *Milhous, supra.*

Our research reveals that the conclusion that AMAX had authority to construct a lateral railroad across public highways may be sustained on the basis of the evidence as it establishes the requisite criteria of IC 1971, 8-4-10-1 (Burns Code Ed.) and IC 1971, 8-4-10-8 (Burns Code Ed., Supp. 1975). During the pendency of the dispute between AMAX and Baker the Indiana General Assembly, apparently cognizant of the circumstances surrounding this matter, amended the Lateral Railroad Act for the first time in its 105 year life in a manner obviously calculated to resolve the problem. The amendment found at IC 1971, 8-4-10-8, *supra,* provides:

> *"Crossing of highways or roads—Compliance with state law.*—It shall be lawful for any such person or persons, or company, or owner, or owners, or their lessees as referred to in IC 1971, 8-4-10-1 to construct such lateral railroad across public highways or roads. This chapter [8-4-10-1— 8-4-10-7] is to apply to all such lateral railroads and highway or road crossings presently planned or under construction, or previously constructed.
>
> Said person, or persons, or company, or owner, or owners, or their lessees, shall comply with all laws or regulations of the state of Indiana, or any agency thereof, concerning the location, construction, or maintenance of such railroads or crossings of public highways or roads."

By the language of this amendment, it is only applicable to lateral railroads planned, under construction or constructed previous to the amendment which became law without the Governor's signature on February 18, 1974. For that reason, our holdings in this case involving the above amendment have no application or effect to any lateral railroads planned and constructed after February 18, 1974.

Despite the limited function of this amendment, there is no dispute by Baker as to AMAX's argument that the amendment applies to this case. While we agree that the amendment does apply to the facts of this case, we do not agree with AMAX that the amendment alone is dispositive of the issue of authority to construct a lateral railroad across public roads and highways.

In our opinion, the question of authority to construct lateral railroads across public highways is, in context of the amendment, two-fold. The first question concerns whether the person seeking to construct the railroad falls within the purview of IC 1971, 8-4-10-1, *supra,* and the second is whether that person, having satisfied the criteria of IC 1971, 8-4-10-1, *supra,* has also complied with any additional laws and regulations.

Examining IC 1971, 8-4-10-1, *supra,* we recognize, as has AMAX, that for AMAX to rightfully construct a lateral railroad across public roads and highways the following four criteria must be satisfied:

(1) that AMAX was a coal mine company,
(2) that the lateral railroad would not exceed ten miles in length,
(3) that the lateral railroad was to connect to another railroad, and
(4) that the highways and roads sought to be crossed must intervene between the mine and the railroad to which the lateral railroad was to be connected.

Under the guidelines of *Hunter* v. *Milhous, supra,* we agree with AMAX that the evidence presented below was sufficient to establish these criteria. However, Baker urges that a fifth criteria exists under IC 1971, 8-4-10-1, *supra,* which the evidence does not establish. Specifically, Baker argues that historically the Lateral Railroad Act has been interpreted in such a manner as to provide the party seeking to construct a lateral railroad the power of eminent domain permitting that party to take by condemnation proceedings any interven-

ing land necessary to construct the railroad. The justification for the grant of authority to exercise eminent domain is that the state has such an interest in the development of its natural resources that the legislature could treat the business of mining and quarrying as a "public use". *Indianapolis Oolitic Stone Co.* v. *Alexander King Stone Co.* (1934), 206 Ind. 412, 190 N.E. 57. Baker now argues that since the *Indianapolis Oolitic* case and in other cases construing the Lateral Railroad Act it was arguably a prerequisite to the exercise of the power of eminent domain that there be no other manner in which to market the products without the lateral railroad proposed, it is necessary under IC 1971, 8-4-10-1, *supra,* that AMAX prove in the case at bar that without the new lateral railroad AMAX would not be able to market its coal. This, Baker urges, cannot be shown since the evidence reveals that AMAX already had service to its mine by another railroad.

While we do agree that the evidence establishes that AMAX does have service by another railroad we do not agree with Baker that this fact is fatal to the proposed lateral railroad. This case is distinguishable for the reason that AMAX owned or leased all the lands on which the proposed lateral railroad was to be constructed except, of course, the intervening highways and roads. It was therefore unnecessary that AMAX invoke the power of eminent domain. We therefore refuse Baker's contention concerning the alleged fifth criterion under IC 1971, 8-4-10-1, *supra.* In so doing, we are compelled to conclude that the trial court's conclusion that AMAX had authority to construct the lateral railroad across the public roads and highways involved was neither contrary to law nor contrary to the evidence. We therefore hold that the first test of authority under IC 1971, 8-4-10-8, *supra,* was correctly decided in favor of AMAX.

Under the second test for authority to construct the railroad across public roads and highways as contemplated by IC 1971, 8-4-10-8, *supra,* we find no error. Baker has failed to demonstrate in what manner, if at all, AMAX's proposed

lateral railroad violates any laws or regulations concerning location, construction or maintenance of the railroad or crossings.

## II.

Baker's second issue is the crux of this case and concerns whether the trial court erred in concluding that PSC had jurisdiction to rule on the petition of AMAX requesting permission to construct the lateral railroad across the highways and roads.

As noted previously, the determination of whether or not AMAX may be granted permission to construct its lateral railroad across public roads and highways is, in context of IC 1971, 8-4-10-8, *supra,* a two tier decision. The first tier concerns whether the criteria of IC 1971, 8-4-10-1, *supra,* have been met. This inquiry is, in our opinion, the crucial determination. The specific problem presented under this issue is that IC 1971, 8-4-10-8, *supra,* does not specifically designate the forum in which this decision is to be made. Baker argues that under the Lateral Railroad Act by virtue of IC 1971, 8-4-10-1, *supra,* all jurisdiction is vested with the circuit court, including jurisdiction to decide the merits of a request to cross public thoroughfares under IC 1971, 8-4-10-8, *supra.* AMAX, however, argues that the jurisdictional mandates of IC 1971, 8-4-10-1, *supra,* on which Baker relies, concern only the jurisdiction for any eminent domain proceedings brought under the Lateral Railroad Act. AMAX maintains that since this case does not involve an attempted exercise by AMAX of the power of eminent domain provided in IC 1971, 8-4-10-1, *supra,* the circuit court is without subject matter jurisdiction over AMAX's petition. AMAX therefore contends that PSC is vested with jurisdiction to hear the petition and that the conclusion of the trial court is correct. For reasons hereinafter stated, we do not agree.

Addressing first AMAX's contention that PSC has subject matter jurisdiction over its petition, we are reminded by Baker of the long line of cases from both this court and from the Indiana Supreme Court which hold without exception that the Public Service Commission derives its jurisdictional authority from its enabling statutes and possessess only such power as is conferred by those enactments. *New York Central R. Co.* v. *Public Service Commission* (1922), 191 Ind. 627, 134 N.E. 282; *Monon R.R. Co.* v. *Citizens of Sherwood Forest Addition* (1969), 146 Ind. App. 620, 257 N.E.2d 846. Moreover, unless a grant of power and authority can be found in the statutes, it must be concluded that there is none. *General Telephone Co.* v. *Public Service Commission* (1958), 238 Ind. 646, 150 N.E.2d 891.

Examining the Lateral Railroad Act in its entirety, we find no grant of authority to the Public Service Commission to determine the merits of a petition to construct a lateral railroad across public thoroughfares. Despite this lack of authority, AMAX directs us to various other statutes which empower PSC to grant or refuse to grant requests for grade crossings of highways and roads by a railroad, claiming that these statutes vest jurisdiction of its petition with PSC. While we do not dispute the authority of PSC to supervise, regulate or eliminate, in an appropriate case, railroad grade crossings of highways, AMAX's reliance on these statutes is totally misplaced in the case at bar. This case does not concern a dispute with the manner in which the crossing is to be made, be it a grade or separated grade crossing, but rather involves the more basic question of whether the crossing can be made at all.

The determination of whether the crossing can be made at all involves first a resolution of whether the requirements of IC 1971, 8-4-10-1, *supra,* which AMAX recognizes as conditions precedent to the construction of the lateral railroad, have been met. While it is true as AMAX points out that the statute does not specifically

vest subject matter jurisdiction with the circuit court, we cannot accept AMAX's argument that this legislative oversight precludes such a conclusion. To reach such a result would be tantamount to granting AMAX, or any other qualified person, unfettered discretion in the construction of lateral railroads across public thoroughfares. We do not believe that that result was contemplated by the legislature when IC 1971, 8-4-10-8, *supra*, was enacted.

The mere failure to specifically note the jurisdiction of the circuit court in IC 1971, 8-4-10-8, *supra*, has no effect whatsoever since the general jurisdiction of circuit courts in Indiana is governed by IC 1971, 33-4-4-3 (Burns Code Ed.). That statute reads:

*"Jurisdiction.*—Said court shall have original exclusive jurisdiction in all cases at law and in equity whatsoever, and in criminal cases and actions for divorce, except where exclusive or concurrent jurisdiction is, or may be conferred by law upon justices of the peace. . . ."

In our opinion, a petition to determine whether the criteria of IC 1971, 8-4-10-1, *supra*, have been met so as to enable the petitioner to construct a lateral railroad falls within the purview of ". . . all cases at law and in equity whatsoever, . . ." so as to vest jurisdiction over the petition with the circuit court. The trial court's conclusion that jurisdiction is with PSC is therefore clearly erroneous.

Having determined that the conclusion of the trial court as to jurisdiction over AMAX's petition was erroneous, the remaining question is whether this error is reversible error. As stated previously, the purpose of AMAX's petition was to seek permission to construct its lateral railroad across public thoroughfares. To be authorized to do this, AMAX must, in the context of IC 1971, 8-4-10-8, *supra*, establish first that it qualifies under the criteria of IC 1971, 8-4-10-1, *supra*, to construct a lateral railroad at all. As AMAX notes

in its brief, included among the requirements of IC 1971, 8-4-10-1, *supra,* which must be satisfied are:

(1) That AMAX is a coal mine company operating a coal mine in the State of Indiana;

(2) That in the course of its operation of the coal mine AMAX is seeking to construct a lateral railroad to provide transportation to market its coal;

(3) That the lateral railroad as proposed would not exceed ten miles in length; and

(4) That the lateral railroad as proposed was to connect with another railroad.

Moreover, if the lateral railroad was to cross public thoroughfares pursuant to IC 1971, 8-4-10-8, *supra,* then IC 1971, 8-4-10-1, *supra,* imposes the requirement that the highways and roads to be crossed must intervene between the coal mine and the railroad to which the proposed lateral railroad was to connect.

As previously noted, the evidence presented before the Vigo Circuit Court in the proceedings below clearly established all these criteria. Thus, to reverse the judgment on basis of an erroneous conclusion as to jurisdiction would be unnecessary in this case. Since the evidence below clearly satisfies the requirements of IC 1971, 8-4-10-1, *supra,* AMAX, pursuant to IC 1971, 8-4-10-8, *supra,* is entitled to construct its lateral railroad across the intervening public highways and roads subject only to any other laws and regulations concerning location, construction and maintenance of the crossing or railroad, including the regulations of PSC with respect to grade or separated grade crossings of lateral railroads, if any. There being no argument by Baker that any other statutes or regulations prohibit AMAX's proposed lateral railroad, we find the erroneous conclusion of the trial court as to jurisdiction to be harmless error. Ind. Rules of Procedure, Trial Rule 61.

### III.

Under his third and final issue Baker argues that the trial court acting through a successor trial judge committed

reversible error in amending the special findings of the previous judge without hearing evidence. We do not agree.

Ind. Rules of Procedure, Trial Rule 63(A) controls this situation. It reads:

"(A) *Disability and unavailability after the trial or hearing.* The judge who presides at the trial of a cause or a hearing at which evidence is received shall, if available, hear motions and make all decisions and ruling required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded. If the judge before whom the trial or hearing was held is not available by reason of death, sickness, absence or unwillingness to act, then any other judge regularly sitting in the judicial circuit or assigned to the cause may perform any of the duties to be performed by the court after the verdict is returned or the findings or decision of the court is filed; but if he is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial or new hearing, in whole or in part. The unavailability of any such trial or hearing judge shall be determined and shown by a court order made by the successor judge at any time."

This rule provides that a successor judge appointed pursuant to Ind. Rules of Procedure, Trial Rule 53.1 may, in his discretion perform any duties that may have been performed by the original judge. This includes determination of any post-trial motions. *Lies* v. *Ortho Pharmaceutical Corporation et al.* (1972), 259 Ind. 192, 284 N.E.2d 792. Since the action of the successor judge was made after examination of briefs and the transcript of evidence we find no abuse of discretion demonstrated. *Lies* v. *Ortho Pharmaceutical Corporation et al., supra.*

## CONCLUSION

The trial court erred in ruling that PSC had jurisdiction to determine the merits of AMAX's petition for permission to construct a lateral railroad. Nevertheless, this error is harmless in light of the evidence presented below supporting

the trial court's conclusion that AMAX did have authority to construct the railroad. The judgment is therefore affirmed and the cause remanded with instructions to enter judgment for AMAX not inconsistent with the views expressed herein.

Affirmed and remanded with instructions.

Robertson, C.J. and Hoffman, J., (participating by designation), concur.

NOTE.—Reported at 344 N.E.2d 73.