Lendall B. TERRY, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 69A01–9106–CR–164.

Court of Appeals of Indiana,
First District.

Nov. 5, 1992.

Robert J. Brown, North Vernon, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Today we are presented with an appeal from someone not unfamiliar with our judicial system. Defendant-appellant Lendall B. Terry is a former Ripley County Circuit Court judge who, after being removed from the bench and disbarred, was later convicted on an unrelated charge of forgery, a Class C felony.[1] He now appeals his conviction, raising six issues for our review, restated as:

I.  Whether the indictment was defective.

II.  Whether the special judge and special prosecutor were improperly selected, and the special judge biased and prejudiced.

III.  Whether the trial court improperly denied Terry's motion for discharge.

IV.  Whether the trial court committed reversible error when it selected the jury from the previous year's venire.

V.  Whether the trial court erred when it ruled evidence seized from Terry's attache case admissible under the inventory search exception.

VI.  Whether the evidence was sufficient to sustain his forgery conviction.

### FACTS

Terry's tenure on the bench could be described as nothing less than tumultuous. In 1975, after receiving numerous complaints, the Indiana Commission on Judicial Qualifications initiated proceedings against Terry in his capacity as Ripley County Circuit Court judge. The Commission conducted a lengthy hearing and concluded Terry had violated the Code of Judicial Conduct and Ethics, the Code of Professional Responsibility, the Oath of Attor-

1. IND.CODE 35–43–5–2.

neys, and the Judicial Oath for Ripley County Circuit Court. The Indiana supreme court affirmed the Commission's findings and conclusions on appeal, and, with reluctance, concluded Terry lacked the judicial temperament and fitness to occupy a judicial office. On February 20, 1975, the supreme court suspended Terry without pay from his position as Ripley County Circuit Court judge. *In re Terry* (1975), 262 Ind. 667, 323 N.E.2d 192, *reh'g denied,* 262 Ind. 667, 329 N.E.2d 38, *cert. denied,* 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 97.

Hardly a year had passed after Terry's suspension when Dennis Ryker, Town Marshal of Milan, Indiana, arrested Terry for traffic offenses. Ryker testified against Terry, and Terry was found guilty of the offenses. Terry's troubles continued for nearly a decade.[2] Ryker continued in law enforcement, and, in the spring of 1986, he decided to run for Ripley County Sheriff. In April of that year, several weeks before the primary election, Ryker saw a "newspaper," the *Versailles Journal* (the journal), which contained a paid political advertisement entitled "A Message From Dennis Ryker." The message, signed "Denny," read, in part:

> Some of you may have forgotten that in 1964 I was charged with child molesting and left the State of Indiana to avoid doing time in prison. . . .
>
> I know a lot about crime. After I left the State of Indiana to avoid a prison term for child molesting in 1964, I moved to Hamilton County, Ohio, where I joined with others in the harmless pastime of stripping automobiles of tires, wheel covers and parts which we fenced. Car theft followed. Then one day my luck ran out and I was caught red-handed by the authorities. Again I faced a prison term. . . .

*Record* at 2263. Both the signature and statements were false.

On the evening of April 23, 1986, only a few days before the primary elections, Ryker and Tom Holt, a Deputy Marshal,

found a copy of the journal on a table outside of a restaurant in Milan. While sitting at a table, they saw Terry driving a Ford Fairlane. Later, Ryker and Holt drove around and found journals in blue plastic bags stuffed into mailboxes. As Ryker and Holt traveled on Main Street, Ryker saw Terry's car parked on the side of the road. Ryker noticed journals had been placed in mailboxes up to where Terry's car was parked.

In the early morning hours of April 25, 1986, Lee Matthews, a Ripley County Deputy Sheriff, found a journal in front of the Holton Bank. He also noticed Terry's Ford Fairlane parked in front of the bank. He followed Terry as Terry drove slowly on Base Line Road in Holton and stopped near a driveway. On the same morning, Vilona Kilpatrick, a resident of Base Line Road, saw a Ford Fairlane approach her home and place something in her mailbox. When she went to retrieve the item, she found a journal in her mailbox and one lying near her neighbor's mailbox. The next day, Ryker saw Terry walking down Main Street in Osgood, Indiana. Terry was placing plastic bags on door handles.

On June 24, 1986, a grand jury was convened and, on September 17, 1986, it handed down the following indictment:

> The Grand Jury for the County of Ripley, in the State of Indiana, upon their oath, do present that Lendall B. Terry, on or about the 24th and 25th days of April 1986 ... did, with intent to defraud certain Ripley County residents and voters, utter a written instrument, to-wit: A message from Dennis Ryker, in such a manner that it purported to have been made by or at the authority of one who did not give authority. . . .

The State did not take Terry into custody, however, until over three years later.

On November 4, 1989, Officer Richard Collins of the Ohio Highway Patrol was routinely checking a rest area in Marion County, Ohio. Officer Collins relayed the license plate numbers of the parked vehic-

---

**2.** After being suspended from the bench effective February 20, 1975, Terry was again accused of professional misconduct, and on September

10, 1979, the supreme court disbarred Terry as an attorney in the State of Indiana.

les to the National Crime Information Center to determine possible criminal activity. Among the vehicles checked was a 1969 Ford Fairlane with Ohio license plates. The license plates were registered to Terry, and Officer Collins discovered Indiana had an outstanding felony warrant for Terry's arrest. Officer Collins arrested Terry, impounded his car, and conducted an inventory search of the articles in the car. The inventory search included an examination of an attache case Officer Collins found in the car. The case contained Ripley County Circuit Court subpoenas, a steno notebook, an envelope, and various papers. It was later discovered the steno notebook contained a handwritten copy of "A Message From Dennis Ryker" and the envelope contained a mock-up of the journal's masthead. Officer Collins contacted the Indiana State Police, and met with Indiana Officers John Mann and Philip Mohr. Officers Mann and Mohr obtained a search warrant from an Ohio judge and seized several incriminating items from Terry's attache case. Terry returned to Indiana on January 2, 1989, and his trial on the forgery charge began over two years later. Terry was convicted of the offense and received the presumptive four-year sentence, with three years suspended for mitigating circumstances, which included Terry's age and health, and lack of prior felonies. The court also imposed a $1,500 fine. Terry now appeals his conviction.

## DISCUSSION AND DECISION

### I

### *Indictment*

■ Terry initially argues the trial court erred in refusing to dismiss the grand jury's indictment, which Terry characterizes as "defective." Under IND.CODE 35–34–1–6(c), defective indictments are subject to dismissal.

Terry first cites *State ex rel. Meloy v. Barger* (1949), 227 Ind. 678, 685, 88 N.E.2d 392, 395, for the proposition that "[g]rand juries must be called by the regular judge of the circuit or criminal court having jurisdiction in criminal matters[,]" and then ar-

gues that it was a judge pro tempore, not a "regular" judge, who called the grand jury. Accordingly, he concludes, the grand jury, being illegally convened, had no power to issue an indictment.

For resolution of this allegation of error we turn to Ind. Trial Rule 63(E), which provides, in part:

**Judge Pro Tempore When Judge is Unable to Attend.** A judge who is unable to attend and preside at his court for any cause may appoint in writing a judge pro tempore to conduct the business of this court during his absence. The written appointment shall be entered in the records of the court. When duly sworn, or without being sworn if he is a judge of a court of this state, *the judge pro tempore shall have the same authority during the period of his appointment as the judge he replaces.*

(Emphasis added.) Here, Terry does not claim the regular Ripley Circuit judge could not have convened the grand jury. Under the plain language of T.R. 63(E), a judge pro tempore may convene a grand jury. *See Richardson v. State* (1983), Ind., 447 N.E.2d 574 (replacement judge may hold sentencing hearing and impose sentence); *State ex rel. Indiana–Kentucky Elec. Corp. v. Knox Circuit Court* (1981), Ind., 422 N.E.2d 1247 (prepare findings and grant new trial); and *Baker v. American Metal Climax, Inc.* (1976), 168 Ind.App. 445, 344 N.E.2d 73 (rule on post-trial motions).

■ Terry's appellant's brief also raises the issue of whether the judge pro tempore acted outside the scope of his appointment inasmuch as the judge pro tempore impanelled, swore, and instructed the grand jury on June 24, 1986, two days before his appointment was authorized. Had Terry raised and preserved this particular allegation of error earlier, we might be inclined to agree with him. But when a judge's "authority is not questioned at the time the judge sits in a cause, all objections thereto are deemed waived." *Swinehart v. State* (1978), 268 Ind. 460, 464, 376 N.E.2d 486, 489. It is true Terry did, in fact, challenge the judge pro tempore's authority, but he

never did so on the specific ground that the judge acted on a day other than that on which he was appointed to serve. That argument appeared first in Terry's appellate brief. We will not consider reversing a trial court's ruling unless the specific objection relied upon on appeal was presented to the trial court for consideration. *Bryant v. State ex rel. Van Natta* (1980), Ind.App., 405 N.E.2d 583.

■ Terry next insists the indictment fails because a police officer was present in the jury room and impermissibly participated in the proceedings, thus violating the requirement of neutrality and detachment during grand jury proceedings.

"It is the rule that the presence of a stranger in the grand jury room during the investigation of a criminal charge is not sufficient to abate an indictment, unless it appears that the person indicted was thereby injured in his substantial rights." *State v. Bowman* (1981), Ind., 423 N.E.2d 605, 606 (citing *State v. Bates* (1897), 148 Ind. 610, 48 N.E. 2). The issue of prejudice to substantial rights involves a factual determination by the trial court. *Id.* at 607. That determination is reversible "only if clearly erroneous as unsupported by the facts and circumstances together with any reasonable inferences to be drawn therefrom." *Id.*

The transcript of the grand jury proceedings gives no indication of any unauthorized and impermissible influence. The trial court's refusal to strike the indictment on this ground, therefore, was not clearly erroneous.[3]

## II

### *Special Judge and Special Prosecutor*

Terry asserts the special judge who presided over his trial and the special prosecutor who prosecuted him were improperly selected, and the special judge was biased and prejudiced.

### a. Selection of Judge

■ The grand jury's indictment was filed on September 17, 1986. Five days later, Denver Gay, the regular judge of the Ripley Circuit Court, disqualified himself under the auspices of T.R. 79(1)(c), which provides, in part:

> Hereafter whenever in any proceeding, whether civil, statutory, or criminal … in any court except the court of magistrates … it shall become necessary to select a special judge, the exclusive manner of his selection shall be as follows: (1) Whenever the regular judge or presiding judge of any court or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person
>
> \*    \*    \*    \*    \*    \*
>
> (c) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding, the venue of which is before such judge, he shall disqualify himself immediately and cause such fact to be certified to the Supreme Court which shall thereupon appoint a special judge.

In contrast, T.R. 79(4) provides for resolution of the selection process by striking names from a list of prospective special judges until one name remains.

Our supreme court appointed Hon. J. Brandon Griffis, a Wayne County judge, as special judge. Terry vehemently objected to this appointment, arguing that Ind.Crim. Rule 13(1) was the correct procedure for choosing a special judge. Crim.R. 13, which, like T.R. 79, states that it describes "the exclusive manner of selection," also provides for resolution of the selection issue by the striking process.

On appeal, Terry maintains his argument that he was entitled to selection of the special judge by the striking process rather than by supreme court appointment. He argues the regular judge had no interest that could be substantially affected by the

---

**3.** We acknowledge Terry's assertion that the transcript contains no references supporting his claim because the transcript was allegedly falsified. This alleged falsification is one basis of the $64,000,000 lawsuit Terry has filed against many of the individuals associated with the grand jury proceedings. As the facts stand now, however, the record is devoid of any support for Terry's claim of impermissible influence in the grand jury room.

outcome of the proceeding. "So why did the regular judge flout Crim.R. 13 and pretend to follow T.R. 79(1)(c)? The answer is pressure from the special prosecutor and the state police." *Brief for Appellant* at 26.

We decline Terry's invitation to speculate about the reasons for the regular judge's disqualification. The regular judge has already explicitly indicated that he felt he should disqualify himself because of his relation to an interest that could be substantially affected by the litigation's outcome. Under these circumstances, certification to the supreme court for appointment of a special judge was proper. T.R. 79(1)(c). Had there been no possibility of an affected interest, T.R. 79(4) or Crim.R. 13(1) might have been appropriate. There was no error.

### b. Selection of Special Prosecutor

■ Terry contends the regular prosecutor illegally selected the special prosecutor. He maintains the regular prosecutor's conflicting interests should have prevented the regular prosecutor from designating the special prosecutor. Contrary to Terry's assertion, however, it was not the regular prosecutor who appointed the special prosecutor, but rather the special judge who appointed him. The regular prosecutor merely recommended a special prosecutor. A circuit or superior court judge may appoint a special prosecutor "if the prosecuting attorney files a petition with the court requesting the court to appoint a special prosecutor, and the court finds that the appointment is necessary to avoid the appearance of impropriety." IND.CODE 33–14–1–6. In this instance Carl Taul, the regular prosecutor at the time, recused himself, concluding, "WHEREFORE, Carl H. Taul, Prosecuting Attorney, Eightieth Judicial Circuit, respectfully requests the Court to appoint Joseph Koenig as Special Prosecuting Attorney in this matter." *Record* at 746. Citing IND.CODE 33–14–1–6, the trial court granted Taul's request. *Record* at 745. There was no error.

### c. Bias and Prejudice of Judge

■ On April 3, 1989, Special Judge Griffis also disqualified himself. A successor special judge, Hon. Thomas Fisher of the Indiana Tax Court, was appointed by our supreme court. Terry's dissatisfaction with Judge Fisher's performance led to Terry's call for a grand jury investigation, a multi-million dollar lawsuit, and now, his continuing accusations of bias and prejudice.

The law presumes a judge is unbiased and not prejudiced. *Taylor v. State* (1992), Ind., 587 N.E.2d 1293. The party seeking to remove the judge on the grounds of bias or prejudice must establish the record shows an "actual" personal bias to overcome the presumption. *Beverly v. State* (1989), Ind., 543 N.E.2d 1111, 1115. Adverse rulings and findings do not *per se* establish bias or prejudice. *Id.* Prejudice must be shown by the judge's conduct and cannot be inferred from his subjective views. *Stanger v. State* (1989), Ind.App., 545 N.E.2d 1105.

After Terry had filed his lawsuit against Judge Fisher and others involved in Terry's litigation and had moved for Judge Fisher's recusal, Judge Fisher acknowledged the lawsuit and observed it arose from conduct involving Terry's criminal prosecution, but then stated "[t]he special judge advises that in spite of said lawsuit, he bears no bias or prejudice for or against Mr. Terry or any other party to this cause." *Record* at 297. Terry's main objection, "the chronicle of delayed rulings," *Brief for Appellant* at 30, was dismissed by our supreme court, which found "the special judge has diligently ruled on all other matters in a timely manner." *Record* at 344. Our discussion in Issue III suggests Terry has only himself to blame for many of the delays preceding his trial. Notwithstanding Terry's protestations to the contrary, we have examined the record thoroughly and simply can discern no evidence of actual personal bias or prejudice on the special judge's part.

Terry argues the mere fact that the special judge had been named as a defendant in a lawsuit Terry filed is enough to require the special judge's recusal from Terry's criminal prosecution. Terry cites Ind.

Judicial Conduct Canon 3(C), which requires a judge to disqualify himself when he finds himself in a proceeding in which his impartiality might reasonably be questioned because he has a financial interest which could be substantially affected by the outcome of the proceedings.

We decline Terry's invitation to adopt a *per se* rule. Rather, these decisions must be evaluated on an individual basis. The imposition of a flat rule would allow a litigant to eliminate judges he found unsatisfactory merely by filing a lawsuit against that judge. Other jurisdictions have so reasoned in declining to impose an automatic recusal rule. In *Matter of Ronwin* (1983), 139 Ariz. 576, 586, 680 P.2d 107, 117, *cert. denied*, 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351, the Arizona supreme court addressed the issue:

> One member of this court recused himself after oral argument because he felt too personally involved in the case to participate in the decision. That leaves four members of this court. Each has been made a defendant by Ronwin in various actions. If we are to recuse ourselves simply because we have been sued by the applicant, then who is left to decide this case? As the Ninth Circuit stated: '[A] judge is not disqualified merely because a litigant sues or threatens to sue him. Such an easy method for obtaining disqualification should not be encouraged or allowed.' *Ronwin v. State Bar of Arizona* [ (9th Cir.1981), 686 F.2d 692, 701], quoting *United States v. Grismore* [ (10th Cir.1977), 564 F.2d 929, 933, *cert. denied*, 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806].... We agree; the mere fact that a judge has been sued by reason of his rulings in a case does not require recusal. Nor can the fact that all judges in the court have been sued require recusal. To honor such a technique would be to put the weapon of disqualification in the hands of the most unscrupulous.

(Footnote omitted.) *See also Commonwealth v. Leventhal* (1974), 364 Mass. 718, 307 N.E.2d 839; *State v. Meyer* (1980), 45 Or.App. 375, 608 P.2d 582; *Rogers v. Wilkins* (1980), 275 S.C. 28, 267 S.E.2d 86.

This is not to say, of course, that a judge need never recuse when faced with a lawsuit from a litigant. But absent some added showing of bias or prejudice as a result of the lawsuit, a litigant's lawsuit alone will not ordinarily require recusal.

Here, the record contains no evidence of any bias or prejudice on the part of the special judge. If anything, Judge Fisher has demonstrated remarkable patience and skill in addressing Terry's many demands. Terry has not established actual personal bias to overcome the presumption of impartiality. Terry's primary complaint against the special judge—tardiness—was rebuked by our supreme court. Other than adverse rulings, which do not *per se* establish bias, *Beverly, supra,* the only evidence Terry points to of the special judge's alleged bias is the lawsuit Terry filed against the special judge. Under these circumstances, the special judge did not err by declining to recuse.

### III

#### *Discharge*

Terry argues the trial court erred when it failed to grant his motion for discharge. The record reveals the State filed an indictment against Terry on September 17, 1986, and Terry was taken into custody in Indiana on January 2, 1989. His trial did not begin, however, until January 7, 1991, over two years after he was arrested. Because he was not brought to trial within one year after he was arrested, and he was not responsible for the delay, Terry asserts he should have been discharged.

Ind.Crim.Rule 4(C) controls our inquiry, and provides, in relevant part:

> **(C) Defendant discharged.** No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him

during such period because of congestion of the court calendar....

When the defendant's acts cause delay, the time limitations specified in Crim.R. 4(C) are extended by the period of the delay. *Little v. State* (1981), 275 Ind. 78, 80, 415 N.E.2d 44, 45. Under Crim.R. 4(C), therefore, Terry should have been discharged when he was not brought to trial by January 2, 1990, unless the delay was chargeable to him. This case has a long and complicated chronology of motions, hearings, and orders. Some of the delays were chargeable to Terry, and some were not. Our task now is to determine the number of days chargeable to Terry.

The following chart shows the delays relevant to our decision:

| Description | Date | # of Days | Chargeable |
|---|---|---|---|
| Terry Arrested | 01/02/89 | | |
| Terry's Motion to Dismiss | 02/10/89 | 264 days | Terry |
| Hearing on Motion to Dismiss | 11/01/89 | 42 days | Terry |
| Terry's Praecipe to Remove Trial Judge From the Case | 12/13/89 | | |
| Supreme Court Order Returning Jurisdiction to Trial Judge | 01/17/90 | 26 days | Terry |
| Denial of Terry's Motion to Dismiss (Trial Scheduled for 06/19/90) | 02/12/90 | | |
| Terry Advised by Court He Could Petition for Indigency Determination | 02/12/90 | | |
| Terry's Motion for Indigency Determination | 05/16/90 | | |
| Indigency Hearing | 05/30/90 | | |
| Terry's Continuance Because of Newly Appointed Counsel (Trial Rescheduled for 09/04/90) | 06/19/90 | 77 days | Terry |
| Trial Continued By the State (Trial Rescheduled for 11/15/90) | 09/04/90 | | |

| | | |
|---|---|---|
| Terry's Continuance to Interview Witnesses (Trial Rescheduled for 01/07/91) | 11/15/90 | |
| | 53 days | Terry |
| TRIAL | 01/07/91 | |

TOTAL DAYS CHARGED TO TERRY: 462 days

### A. *Terry's Motion to Dismiss*

We address first the delay caused by Terry's Motion to Dismiss. Terry filed the motion on February 10, 1989, and the trial court held a hearing on the motion on November 1, 1989. This entire period of 264 days was chargeable to Terry. *Id.* at 80, 415 N.E.2d at 45. As provided by Ind. Trial Rule 53.1(A), the "lazy judge" rule, the trial court had 30 days after the hearing to rule upon Terry's motion. The court failed to meet this 30–day requirement, however, so, on December 13, 1989, pursuant to Ind. Trial Rule 53.1(B), Terry filed a praecipe to remove the case from the assigned judge. By order of January 17, 1990, Chief Justice Shepard issued an order continuing jurisdiction with the trial judge.

■ The case law clearly holds the 42–day period between November 1, 1989, and December 13, 1989, was chargeable to Terry, while the period between December 13, 1989, and January 17, 1990, was not chargeable to him. *See Anderson v. State* (1982), Ind., 439 N.E.2d 558, 559 (defendant charged with the 47 days the motion was pending before the court—defendant had to file praecipe after 30 days to invoke lazy judge rule and terminate trial court's jurisdiction). Having regained jurisdiction on January 17, 1990, the trial court denied Terry's Motion to Dismiss on February 12, 1990. This additional 26–day delay is chargeable to Terry.[4] Accordingly, the total delay properly charged to Terry for his Motion to Dismiss was 332 days.

### B. *Delay Due to Newly Appointed Counsel*

■ We address next Terry's Motion for Continuance filed on June 12, 1990, seven days before his trial was to begin. Terry requested the delay because his appointed counsel, who entered his appearance on June 12, 1990, did not have time to prepare for trial.

Although the trial court had issued an order on February 12, 1990, advising Terry the court would examine his indigency, Terry declined the examination at that time "because (1) he object[ed] to having as counsel an attorney licensed to practice in Indiana because such attorney [was] under the control of the Indiana Supreme Court, and (2) because he [did] not want to disclose his assets to the judge of the court since the judge [was] a defendant in a pending lawsuit for money damages brought by defendant Lendall Terry." *Record* at 372. Terry changed his mind, however, and on May 16, 1990, he filed a motion to determine indigency. The court conducted a hearing on May 30, 1990, and, on the same day, issued an order finding Terry indigent. Just seven days before his trial was to begin, Terry filed a motion for continuance so his newly appointed counsel could prepare for trial. The court granted the motion and rescheduled the trial for September 4, 1990.

---

4. We note Judge Fisher first denied Terry's Motion to Dismiss on December 14, 1989, the day after the Clerk of Court withdrew the case from his court. Because the judge did not have jurisdiction over the case on December 14, 1989, the order issued on that date denying Terry's Motion to Dismiss had no effect. *See State v. Eaton* (1991), Ind.App., 581 N.E.2d 956, 960, *trans. denied* (once trial court lost jurisdiction over the case, it had no jurisdiction to grant the Eatons additur).

A defendant may not knowingly wait until just days before trial to secure counsel, thereby delaying trial, and then not be charged with the resulting delay. *See Little, supra,* at 80, 415 N.E.2d at 45–46 (39–day delay chargeable to defendant when defendant sought to replace court-appointed counsel with privately retained counsel); *Eguia v. State* (1984), Ind.App., 468 N.E.2d 559, 565 (delay caused by defendant's failure to obtain counsel or request appointed counsel properly charged to the defendant). Because Terry delayed for three months to request a determination of indigency, and, as a result of that delay, forced his trial to be continued, the 77–day period between June 19, 1989, the original trial date, and September 4, 1990, the rescheduled trial date, is properly charged to him.

### C. *Terry's Motion to Continue to Interview Witnesses*

■ Finally, on November 13, 1990, Terry filed a motion to continue his trial, then scheduled for November 15, 1990, so he could interview additional witnesses. The court granted his motion and rescheduled the trial for January 7, 1991, the day the trial did, in fact, begin. Terry caused this 53–day delay between November 15, 1990, and January 7, 1991. The 53 days are charged to him. *Little, supra,* at 80, 415 N.E.2d at 45.

### D. *Total*

When the defendant causes his or her trial to be delayed, the one-year time limitation mandated in Crim.R. 4(C) is extended by the period of the delays. *Id.* In this case, Terry was responsible for at least 462 days of delay. Therefore, the State had to bring Terry to trial within the original 365 days mandated by Crim.R. 4(C), or by January 2, 1990, and then within an additional 462 days, or by April 9, 1991. The trial began on January 7, 1991. Terry was not denied a speedy trial under Crim.R. 4(C), and his motion for discharge was properly denied.

## IV

### *Jury Venire*

■ Terry also complains the trial court committed reversible error when it selected the jury from the previous year's venire. The record reveals Terry's trial was finally scheduled to begin on January 7, 1991. As of December 31, 1990, however, only one jury commissioner had been appointed by the regular Ripley County Circuit Court judge, the other jury commissioner was not scheduled to be appointed until after January 1, 1991, and the names of prospective jurors to serve during 1991 had not been selected. In response to the situation, Special Judge Fisher issued the following order, which provided, in relevant part:

> The undersigned special judge finds that there is not sufficient time for another jury commissioner to be appointed, sworn; for the jury commissioners to select the names to be deposited in the box; for the names to be drawn from the box and for the persons ordered to be summoned to be notified, and for counsel to review the backgrounds of the jurors called for service, all as provided in IC 33-4-5.

> The undersigned special judge therefore finds that to have a panel of prospective jurors to try this cause as scheduled, the persons drawn for petit jury service during the last quarter of 1990 shall likewise be available and called for the trial of this cause.

*Record* at 577–78. Terry filed a motion objecting to use of the 1990 venire, and the trial court denied the motion.

The selection of prospective jurors is governed, in part, by IND.CODE 33-4-5-9, which provides, in relevant part:

> IND.CODE 33-4-5-9

> (a) During the month of December, and at such other times as the judge deems necessary, the judge of any court of record in which jury trials are had shall by written order direct the clerk of the circuit court to draw grand jurors or petit jurors from the names selected by the jury commissioners, which names shall be drawn by the clerk in the presence of the jury commissioners, in a number equal to the number of jurors to be summoned according to the judge's or-

ders. The names of jurors for each court having criminal jurisdiction shall be drawn first.

In addition, IND.CODE 33–4–5–9(e) provides that the rules governing jury commissioners and selection of the venire shall be construed liberally:

> (e) This section shall be construed liberally, to the effect that no indictment shall be quashed, and no trial, judgment, order, or proceeding shall be reversed or held invalid on the ground that the terms of this section have not been followed unless it appears that the noncompliance was either in bad faith or was objected to promptly upon discovery and was probably harmful to the substantial rights of the objecting party.

Minor irregularities in compliance with the provisions do not constitute reversible error. *Wilson v. State* (1989), Ind.App., 536 N.E.2d 1037, 1040, *trans. denied. See also Owen v. State* (1979), 272 Ind. 122, 125, 396 N.E.2d 376, 378–79 (failure to comply with jury selection statutes did not violate legislative intent and defendant was not prejudiced by the procedure employed); *Shack v. State* (1972), 259 Ind. 450, 457, 288 N.E.2d 155, 160 (where statute regarding selection, swearing and instruction of jury commissioners was substantially complied with and no prejudice was shown from slight deviation which occurred when commissioners were appointed in December instead of November, defendant was not entitled to reversal on basis of such deviation).

Applying the liberal construction mandated by IND.CODE 33–4–5–9(e), it is clear Terry's complaint about selecting the jury from the previous year's venire is without merit. Terry has not shown the court acted in bad faith when it failed to strictly comply with IND.CODE 33–4–5–2(a). Furthermore, he has completely failed to show he was prejudiced by the noncompliance. The trial court ordered the 1990 venire to be retained because the 1991 venire had not been selected and could not be selected in time for Terry's trial scheduled to begin on January 7, 1991. Under these circumstances, impaneling prospective jurors selected in 1990 prevented Terry's trial from being delayed further. There was no error.

## V

### *Inventory Search*

■ In this case, the trial court ruled the search warrant was invalid, but then admitted evidence seized from Terry's attache case under the inventory search exception. Terry argues application of the inventory search exception was erroneous. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures those areas in which a defendant has an actual or subjective expectation of privacy which society recognizes as reasonable. *Smith v. Maryland* (1979), 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226. To protect against unreasonable searches and seizures, government searches must generally be conducted pursuant to a properly issued search warrant. *Arkansas v. Sanders* (1979), 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235, 241; *Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 274. Although the warrant requirement is nearly absolute, a "few jealously and carefully drawn exceptions" have been made to this rule. *Sanders, supra,* at 759, 99 S.Ct. at 2590–91, 61 L.Ed.2d at 242. The burden of demonstrating a warrantless search was conducted within the confines of an exception to the warrant requirement falls upon the state. *Rabadi, supra,* at 274.

An exception to the warrant requirement has been recognized for inventory searches of impounded automobiles. *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Dixon v. State* (1982), Ind., 437 N.E.2d 1318. An inventory search is one conducted under routine administrative procedures designed to protect private property in police custody, to protect the police from claims of lost or stolen property, and to protect the police from potential danger. *State v. Tucker* (1992), Ind.App., 588 N.E.2d 579, 581. Probable cause is not an issue in inventory searches because of the non-criminal context in which they occur. *Rabadi, supra,* at 274. If the inventory search is not con-

ducted as a matter of routine department policy, however, the risk that it is being used as a mere pretext to conceal an investigatory police motive becomes too great, and the warrantless search is unreasonable and invalid. *Id.*

It is important to note that the State has not challenged the trial court's ruling that the search warrant was invalid. In addition, the State fails to raise the "good faith" exception first recognized in *United States v. Leon* (1984), 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677, 699, which allows, in certain circumstances, the use of evidence seized in good faith reliance on a search warrant that is ultimately held to be invalid. As our supreme court recognized in *Mickens v. State* (1992), Ind., 596 N.E.2d 1379, 1380, the State could have addressed these issues in its appellee's brief without first filing a cross-appeal. Because the State failed to do so, we need focus only on the validity of the inventory search.

Here, the Ohio arresting officer performed an inventory search of Terry's automobile. Terry's attache case, which contained an incriminating notebook, was also inventoried. The Ohio officer then contacted the Indiana police and reported the arrest and the presence of the attache case. At this time, however, the Ohio police officer did not realize the inculpatory nature of some of the items he inventoried. *Record* at 1856–57. In fact, he did not list the key pieces of evidence in the inventory report. *Record* at 2300–02.

Two days later, the Indiana police and the Ohio arresting officer sought and obtained a search warrant to search Terry's attache case. The Indiana police recognized some items as incriminating (most importantly, the notebook), seized them, and returned to Indiana. The trial court later invalidated the search warrant on two grounds: (1) the State failed to produce the recording of the search warrant hearing, and (2) the supporting affidavit of the arresting officer did not contain sufficient information linking Terry to the crime. The trial court ultimately admitted the evidence, however, after concluding the evi-

dence "was the subject of an administrative inventory and as such [was] admissible...." *Record* at 2066.

We disagree with this conclusion. The Indiana police officers' search and seizure, which occurred two days after the Ohio officer's routine administrative search, was an investigatory search, not an inventory search. The state argues the Indiana police officers' entry into another state to inventory the contents of an automobile already inventoried by the Ohio police was merely part and parcel of routine caretaking procedures. The facts, however, strongly suggest otherwise. The interests protected by the inventory exception were satisfied in full by the time the Indiana police arrived on the scene. Under these circumstances, we find the trial court abused its discretion in admitting the seized evidence under the inventory exception.

■ Not all constitutional error requires reversal, however. *Chapman v. California* (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; *Hester v. State* (1990), Ind.App., 551 N.E.2d 1187. The inquiry we must make in deciding whether a constitutional error requires reversal is whether we are "able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman, supra,* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 711. If we cannot make such a statement, we are compelled to reverse.

We cannot say the admission of the illegally seized evidence was harmless beyond a reasonable doubt. Absent the incriminating evidence found in Terry's attache case, the only remaining evidence that Terry was guilty of forgery was at best circumstantial. We note that erroneously admitted evidence is harmless only if the properly admitted evidence supporting the guilty verdict is not only substantial but overwhelming. *Hester, supra,* at 1192. That is not the case here. The trial court erred in admitting this evidence.

## VI

### *Sufficiency of the Evidence*

■ Finally, Terry argues the evidence was insufficient to sustain his conviction

for forgery because the State failed to prove he acted with the requisite intent to defraud.[5] If Terry prevails on this issue, double jeopardy concerns will prevent him from being retried in a second trial. *See* U.S. Const. amend. V; *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. When a conviction is reversed on appeal solely because of trial error, however, retrial is constitutionally permissible. *United States v. Mandel* (4th Cir.1979), 591 F.2d 1347, *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236. With these principles in mind, we now continue our analysis.

In this case, we have ruled the trial court erred when it admitted highly incriminating evidence seized from Terry's attache case, including a notebook with a handwritten copy of "A Message From Dennis Ryker," an envelope with a "Versailles Journal" masthead taped to the front, and a copy of the "Versailles Journal." This evidence overwhelmingly connected Terry to the creation of the journal. Furthermore, based on the natural and usual consequences of being exposed to this so-called campaign literature, the jury could certainly have found Terry intended to deceive his readers, induce them to rely, and cause them to suffer injury. *See Wendling v. State* (1984), Ind., 465 N.E.2d 169, 170; *Eifler v. State* (1991), Ind.App., 570 N.E.2d 70, 77, *trans. denied.* When this evidence is eliminated from consideration, however, it may be arguable the evidence is insufficient to sustain Terry's forgery conviction.

We must now determine whether we are compelled to address the overall sufficiency of the evidence absent the evidence improperly admitted at trial. With guidance from both federal and Indiana case law, we conclude it would be inappropriate in this case

to reach the issue of the sufficiency of the remaining evidence.

In *Mandel, supra,* the Fourth Circuit concluded that, absent extraordinary cases, appellate courts should not engage in sufficiency review when a conviction is reversed because of trial error.[6] The court explained:

In many cases ... [the court] would be doing a distinct disservice to the defendants to decide on appellate review that if a part of the evidence had been omitted the balance would be sufficient to convict. Among other things, this rather invades the province of the jury and the trial court on retrial. The jury is the proper trier of the facts, including the credibility of the witnesses and the inferences to be drawn from the testimony. Perhaps the faulty evidence was the key to the jury's decision; perhaps it was not....

Another reason for not requiring an appellate court to adjudge the sufficiency of the balance of the evidence, when a part of the evidence has been improperly admitted, is that it is impossible to say what other evidence the government might have produced had the faulty evidence not been admitted, and what theory of the case the government might have principally pursued had it been presented in the context of different evidence before the jury.

*Id.* at 1373–74. Similarly, in *Mulry v. State* (1980), Ind.App., 399 N.E.2d 413, this court declined to reach the issue of the sufficiency of the remaining evidence when we reversed the defendant's conviction based on reversible trial error and remanded for a new trial.

We now conclude that when the remaining evidence is neither clearly overwhelming nor clearly insufficient, the reasoning

---

**5.** The elements of forgery are defined under IND.CODE 35–43–5–2 as follows:
   A person who, with intent to defraud, makes or utters a written instrument in such a manner that it purports to have been made:
   (1) by another person;
   (2) at another time;
   (3) with different provisions; or
   (4) by authority of one who did not give authority;

commits forgery, a Class C felony.

**6.** In *Greene v. Massey* (1978), 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15, the United States Supreme Court specifically left unanswered the question of whether double jeopardy would bar a second trial when the legally competent evidence was insufficient to prove guilt.

set forth in both *Mandel* and *Mulry* remains sound. Such is the case here. Neither Terry nor the State would be served if we adjudicated the sufficiency of the remaining evidence when we have ruled important evidence inadmissible. To do so would require us to speculate about whether the State would have proceeded on a different theory had the inadmissible evidence been excluded, and it would force us to weigh evidence properly left for the triers-of-fact. We do not decide whether the properly admitted evidence was sufficient to sustain Terry's forgery conviction. This question is left to the trial court and jury on retrial.

### CONCLUSION

The judgment is reversed, and this cause is remanded for a new trial consistent with this opinion.

ROBERTSON, J., and SHARPNACK, C.J., concur.