Nelson Hunter HARRIS, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–9305–CR–589.

Supreme Court of Indiana.

Dec. 16, 1994.

Robert C. Perry, Steckler Perry & Ryan, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant for Murder, Felony Murder, Robbery, Conspiracy to Commit Robbery, and Confinement. The court found that the Felony Murder and Conspiracy to Commit Robbery convictions merged with the Murder and Robbery convictions. Appellant was sentenced to sixty (60) years imprisonment on the Murder conviction, twenty (20) years on the Robbery conviction and twenty (20) years on the confinement conviction, all sentences to run consecutively for an aggregate sentence of one hundred (100) years.

The facts are: On November 23, 1991, Kurt Kahlo was shot and killed during a robbery of the Marathon Gasoline Station located at the intersection of 49th Street and Pennsylvania in Indianapolis. Mr. Kahlo apparently was alone in the station at the time of the robbery. Upon notification by potential customers that no one was in attendance at the open station, the police investigated and found Mr. Kahlo's body in the back of a service bay in the station. Further investigation disclosed that the muzzle of a gun had been placed against the side of his head and the fatal shot was fired. The State presented evidence that on that evening Nelson Harris, the appellant in this case, his brother, James "Chuck" Harris, and Terry Buggs decided they needed some money and embarked on a plan to rob the Marathon Station where James Harris had previously worked, and where Terry Buggs was known.

The trio first drove to a liquor store where they purchased and consumed some wine.

They then drove to the Marathon Station, looked it over, and parked where they could not be seen from the station. Appellant, being the only one that was not known at the station, went in and purchased a soft drink in order to be able to view the inside of the station prior to the robbery.

He returned to the car and announced his intention to carry out the robbery. He obtained a gun from the console of the automobile and reentered the station. When he returned he announced that he had killed the attendant because he wanted to see how it felt. He then gave approximately $20 each to Terry Buggs and James Harris. He kept one ring he had taken from the victim and gave the other one to James Harris. After the robbery, Buggs took possession of the gun and later sold it to Jason Smith from whom it was recovered. Ballistics tests showed that it was in fact the gun that had killed Kahlo. Some two or three months before the murder, appellant had made "joking remarks that he would like to find out how it felt to kill somebody."

■ Appellant claims he was denied due process when the prosecuting attorney argued that they would not bring charges against an innocent man and also made improper comments on appellant's failure to testify. The prosecutor's remarks to the effect that they would not bring charges against an innocent man came during rebuttal argument in response to defense counsel's claim made during his final argument that the State really had no case against appellant but was merely inducing Buggs to lie about appellant's participation in the robbery by offering him a "deal" in exchange for his testimony. The prosecuting attorney had every right to respond to appellant's final argument. The prosecuting attorney's comments here fell within the normal ambit of prosecutorial advocacy. It was her duty to respond to appellant's argument and to make a persuasive final argument. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119.

■ Appellant's claim that the prosecuting attorney referred to his remaining silent during the trial is not persuasive. In rebuttal argument, the prosecuting attorney was

making reference to the fact that after his arrest in facing the truth of his guilt, he did not have "the gumption to do what Terry Buggs did and that's to tell the truth." Here again, the prosecuting attorney was answering appellant's argument to the jury that Buggs was a liar and should not be believed. The prosecutor merely was commenting on the evidence that had been presented which tended to bolster Buggs testimony. The prosecutor was comparing the believability of appellant's contention as opposed to the State's contention as supported by Buggs' testimony.

■ As this Court has previously stated: "A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would be otherwise objectionable." *Id.* at 1126. We cannot say that reversible error occurred during the prosecuting attorney's rebuttal argument. We would further point out that defense counsel made no objection to the prosecuting attorney's comments on rebuttal nor did he request an admonishment to the jury to disregard the comments of the prosecutor. His failure to so act constituted a waiver of the issue. *Brown v. State* (1991), Ind., 572 N.E.2d 496. Appellant claims however that this Court should treat the prosecutor's conduct as fundamental error. However, as pointed out above, we do not consider the prosecutor's conduct as error. Therefore, his claim of fundamental error must fail. We find no error in the manner in which the prosecuting attorney conducted her rebuttal argument.

■ Appellant contends the trial court erred in overruling his objection to the testimony of Lakisha Tyus to the effect that on previous occasions she had heard appellant state in a joking manner that "he wanted to see how it felt to kill somebody." The matter of Ms. Tyus' testimony was raised in a motion in limine. After hearing evidence, the trial court overruled the motion in limine and found that Ms. Tyus could in fact testify. However, there was no objection at the time Ms. Tyus testified before the jury. A motion in limine is not a final ruling and preserves nothing for appeal. *Hadley v. State* (1986), Ind., 496 N.E.2d 67.

■ In order to preserve a question on appeal, the objection must be made at the time the evidence is offered during the trial. *White v. State* (1982), Ind., 431 N.E.2d 488. However, even had a proper objection been made at the time the evidence was presented to the jury, it would have been to no avail. In *Cornelius v. State* (1981), Ind., 425 N.E.2d 616, citing *Bertram v. State* (1978), 268 Ind. 368, 375 N.E.2d 1098, this Court pointed out that the trial court has wide discretion to admit evidence showing the motive or intent of the defendant.

In that case we stated:

"Any evidence tending to prove a material fact is admissible even though its tendency in that direction may be slight. All circumstances relative to or tending to shed light on the intent or motive of the defendant or tending fairly to explain his actions are admissible even though they occurred prior to the crime. It was proper to submit the tendered testimony to the jury in order that they might determine whether or not such evidence tended to explain appellant's hostility toward the [victim]. . . . It was within the province of the jury to determine whether these facts were pertinent to establish appellant's motive and intent and rebut his testimony. . . . The trial court did not err in overruling appellant's objection to the testimony." *Id.* at 617.

In the case at bar, it was relevant for the State to show that appellant had stated a desire to see how it felt to kill someone, especially when the testimony of Buggs was that he made a very similar comment upon returning to the car immediately after the robbery. We find no error in the admission of Ms. Tyus' testimony.

■ Appellant claims there is insufficient evidence to support the verdict of the jury. He bases this contention on the proposition that the testimony of Terry Buggs was not believable because he also stood accused of the same crime and that he was testifying against appellant in order to obtain a "deal" from the State. Appellant is correct in stating that it is well established in Indiana that the testimony of an accomplice is highly sus-

pect and should be strongly scrutinized by the trier of fact, citing *Newman v. State* (1975), 263 Ind. 569, 334 N.E.2d 684.

 However, in the case at bar, the record discloses not only the testimony of Buggs but the testimony of others who had heard appellant make statements concerning the desire to kill someone, that appellant was later seen destroying a ring which had been taken from the victim, and that appellant told witness Jackson that he obtained the ring from someone in a robbery. Under these attending circumstances, it was within the province of the jury to believe Buggs' version of the events implicating appellant in the robbery, murder, and confinement of the victim. It is the function of the jury to observe the demeanor of the witnesses and determine their credibility. This Court will not disturb their decision in that regard. *Lowe v. State* (1989), Ind., 534 N.E.2d 1099; *Head v. State* (1988), Ind., 519 N.E.2d 151.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

SULLIVAN, J., concurs in result without separate opinion.