**Enlow ROSS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–9506–CR–211.**

Court of Appeals of Indiana.

May 13, 1996.

June D. Oldham, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Meredith J. Mann, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Enlow Ross (Ross) appeals following his conviction for rape, a Class A felony[1]; and burglary, a Class B felony[2].

We affirm.

### ISSUES

Ross raises three issues for our review which we restate as follows:

    1. Whether the State's DNA witness was properly qualified as an expert.

    2. Whether the trial court erred by admitting a videotape of general DNA procedure.

    3. Whether the manner in which the State exercised its peremptory challenges offended *Batson* principles.

### FACTS AND PROCEDURAL HISTORY

On March 9, 1990, the victim Toni Anderson was asleep in the bedroom of her apartment when she was awakened by a man with a hood covering his face. The man held a knife to Anderson's throat, covered her face with a pillow and raped her repeatedly. When Anderson thought the man had left the apartment, she called 911. Police arrived within minutes and transported her to Wishard Hospital where a rape kit was completed.

---

1.  IND.CODE 35–42–4–1 (1993).

2.  I.C. 35–43–2–1 (1993).

Anderson was never able to positively identify Ross; however Ross was identified as the perpetrator at trial through DNA and fingerprint evidence.

On July 13, 1994, Ross was charged by information with rape and burglary.[3] Following a trial by jury, he was convicted of both counts.

### DISCUSSION AND DECISION
#### I. DNA Expert Witness

Ross contends that the State's DNA witness was not properly qualified as an expert. Dr. Mohammed Tahir, of the Marion County Forensic Services Agency, sponsored the State's critical DNA evidence. After conducting DNA testing on the vaginal swab samples taken from Anderson and Ross's blood samples, Dr. Tahir opined that Ross was the source of the seminal fluid. Ross did not object at trial to Dr. Tahir's qualifications, nor did he object when Dr. Tahir offered his opinion that the seminal fluid originated from Ross. Accordingly, Ross failed to preserve this issue for appeal and any error has been waived. *Harris v. State,* 644 N.E.2d 552, 554 (Ind.1994) (failure to raise error at trial results in preclusion of appellate review).

■ However, we note for the sake of finality that Dr. Tahir was eminently qualified to testify as an expert in the field of DNA testing. Ind.Evidence Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Absent an abuse of discretion, we will not disturb a trial court's determination that a witness is qualified to testify as an expert and render an expert opinion. *Matter of Adoption of L.C.,* 650 N.E.2d 726, 733 (Ind. Ct.App.1995), *reh'g denied, trans. denied, cert. denied,* — U.S. —, 116 S.Ct. 1423,

134 L.Ed.2d 547. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

■ Dr. Tahir is a forensic scientist specializing in the area of forensic serology and DNA analysis. He has supervised the Crime Lab's DNA and serology section since 1990. Dr. Tahir holds several degrees including two master degrees and a doctorate degree. In addition, he has attended extensive FBI training seminars in the area of DNA analysis, published several academic articles on DNA analysis, and has taught courses on DNA analysis. Dr. Tahir has testified as an expert witness over 300 times. Based on these qualifications, we have no hesitation in concluding that the trial court did not abuse its discretion in allowing Dr. Tahir to testify as an expert and render his expert opinion.

#### II. Admissibility of Evidence

■ Next, Ross contends that the trial court erred in admitting a videotape outlining the general procedures utilized in DNA analysis during Dr. Tahir's testimony. Specifically, Ross argues that the procedures outlined on the videotape "had nothing to do" with the procedures employed by Dr. Tahir in this case. Appellant's Brief at 13. We disagree.

Although the testing techniques outlined in the videotape were not identical to the steps taken by Dr. Tahir, the tape was offered and admitted for demonstrative purposes only. Demonstrative evidence is tendered for the purpose of rendering other evidence comprehensible to the trier of fact. *See* J. Strong, McCormick on Evidence Sec. 212 (4th Ed.1992). To be admissible, demonstrative evidence need only be sufficiently explanatory or illustrative of relevant testimony in the case to be of potential help to the trier of fact. *Meisberger v. State,* 640 N.E.2d 716, 721 (Ind.Ct.App.1994), *trans. denied.*

---

3. Ross was originally charged with these crimes in June of 1993; however, the charges were dismissed. The State completed DNA testing in December of 1993, and refiled the instant charges in 1994.

The tape was made by Life Codes Corporation, a private New York laboratory that performs DNA analysis. The tape depicted general testing procedures utilized in DNA analysis and Dr. Tahir opined that the tape would be educational and helpful to the jury in their understanding of DNA and the general manner in which DNA analysis was performed in a laboratory. After viewing the approximately 12 minute tape, the trial court admitted it over Ross's objection. We viewed the tape as well and find that the videotape was properly admitted as relevant demonstrative evidence.

### III. Batson Challenge

As his final argument, Ross contends that he was deprived of his equal protection rights when the State used its peremptory challenges to purposefully exclude African–Americans from the jury pool.

Ross is an African–American man. He was convicted for the rape of the victim Toni Anderson, a Caucasian. Following voir dire and prior to trial, Ross challenged the State's use of its peremptory challenges. Ross does not include a transcript of the jury selection process in the record of proceedings, and therefore we cannot determine with certainty the manner in which these strikes occurred.[4] However, it appears that the State exercised three of its peremptory challenges to strike African–American potential jurors. It also appears from the limited record we have before us that *all* African–American veniremen were not struck. In fact, one African–American juror served on the final jury.

Purposeful racial discrimination in the selection of a jury violates a defendant's right to equal protection. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). To establish a prima facie case of racial discrimination, a defendant must demonstrate that: (1) he is a member of a cognizable racial group; (2) the prosecutor has peremptorily challenged a member of the defendant's race; and (3)

these facts and other relevant circumstances raise an inference that the challenges were made because of race. *Taylor v. State,* 615 N.E.2d 907, 911 (Ind.Ct.App.1993). Once a defendant establishes a prima facie case of purposeful discrimination, the burden then shifts to the prosecution to come forward with race-neutral reasons for the peremptory challenges. *Id.*

It has been reiterated in several recent cases that the prosecutor's explanation need not be particularly persuasive so long as it constitutes a facially valid reason for the exclusion. *See Purkett v. Elem,* —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), *reh'g denied,* —— U.S. ——, 115 S.Ct. 2635, 132 L.Ed.2d 874; *Pfister v. State,* 650 N.E.2d 1198 (Ind.Ct.App.1995); *Palmer v. State,* 654 N.E.2d 844 (Ind.Ct.App.1995).

Following Ross's objection, the trial court held a hearing pursuant to *Batson* wherein the prosecutor articulated the reasons why she exercised her peremptory challenges to strike the particular jurors. The prosecutor offered the following explanations for striking each of the three African–American veniremen: Mr. Lee was struck due to his medical problems and his need to urinate frequently; Mr. Gilbert was struck because he was up the entire night before; Mrs. Bacon was struck because she was a union representative and the prosecutor feared a potential bias against the State, and also because the prosecutor denoted negative body language from Mrs. Bacon including failure to make eye contact, difficulty listening and a general lack of rapport between the two. The prosecutor felt that these nonverbal communications were indicative of a closed mind. The trial court concluded that each of the African–American jurors had been struck for race-neutral reasons.

Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Purkett,* —— U.S. at ——————, 115 S.Ct. at

---

4. It is the duty of the party alleging error to present this court with a record sustaining his argument. *See Chambers v. State,* 551 N.E.2d 1154, 1158 (Ind.Ct.App.1990). Generally, we would be unable to review this allegation of error in the absence of a record to support the error; however, because a transcript of the *Batson* hearing is included in the record before us, we are able to render a decision on this issue.

1770–71. As Justice O'Connor stated in *J.E.B. v. Alabama,* 511 U.S. 127, ——, 114 S.Ct. 1419, 1431, 128 L.Ed.2d 89 (1994):

> [t]he essential nature of the peremptory challenge is that it is one exercised without a reason stated … Indeed, often a reason for it cannot be stated, for a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's responses at voir dire or a juror's bare looks and gestures … Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain his intuition, are the very reason we cherish the peremptory challenge.

The trial court concluded that the African–American jurors had been struck for race-neutral reasons. Based on precedent and the fact that the trial court's findings are supported by the record, we find no error.

### CONCLUSION

In sum, Dr. Tahir was qualified to testify as an expert in the field of DNA analysis and to render his expert opinion. The videotape depiction of general DNA analysis was properly admitted as demonstrative evidence. Further, the State met its burden of providing facially valid reasons for its peremptory strikes of the three African–American veniremen and the trial court determined that these reasons were race neutral.

Accordingly, the trial court is affirmed in all respects.

DARDEN and FRIEDLANDER, JJ., concur.