**Dwayne M. BROWN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9603–CR–158.

Court of Appeals of Indiana.

Aug. 20, 1997.

Transfer Denied Oct. 22, 1997.

Dwayne Marc Brown, Indianapolis, Pro Se.

Jeffrey A. Modisett, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

ROBERTSON, Judge.

Dwayne M. Brown, pro se, appeals his convictions, after a trial by jury, of seven counts of Ghost Employment for which he was sentenced to enhanced, concurrent three-year sentences (all suspended). Brown raises five issues, which we restate and expand into six, none of which constitutes reversible error.

### FACTS

The facts in the light most favorable to the verdict reveal that Brown was elected to the office of Clerk of the Indiana Supreme Court, the Court of Appeals, and the Tax Court. While in office, Brown actively campaigned for two other elected offices—Indiana Attorney General and U.S. Representative. Each of the seven counts of the indictment charged that Brown had used state employees, while they were being compensated by the State, in furtherance of his political campaigns as proscribed by the ghost employment statute, Ind.Code 35–44–2–4(b), which reads as follows:

> A public servant who knowingly or intentionally assigns to an employee under his supervision any duties not related to the operation of the governmental entity that he serves commits ghost employment, a Class D felony.

The first three counts of the indictment involved a state employee hired by Brown in 1992. At the time this employee was hired, Brown told her that she would be working on his campaign. Brown told others in the office that this employee did not need to be trained to perform any of the office duties because she would be doing political work. During the first week of work, Brown requested that this employee attend the movie "The Pelican Brief" with him during office hours to allow her to learn more about the political and legal process. After that first week of work, Brown directed that the employee receive a $2,500.00 bonus from the State. Brown also requested this employee to attend a political fund raising event on his behalf during office hours. Finally, Brown directed this employee to spend office hours drawing sketches which were to have been used for Brown's campaign posters.

The fourth and fifth counts of the indictment pertain to another state employee hired by Brown to serve in a position described as "press secretary intern." Brown assigned this employee, during office hours, to research the voting record of the incumbent U.S. Representative Brown had hoped to unseat. Brown also directed this employee to attend a fund raising event held for his benefit on a Saturday for which the employee was compensated by the State at the rate of $50.00 per hour.

The sixth and seventh counts of the indictment relate to an incident in which Brown directed two other state employees to accompany him on a trip, during office hours, to Monroe County where he participated in a debate-style luncheon in conjunction with his campaign for Attorney General. One of these employees was directed to take notes regarding the other candidates' speeches and performances.

Additional facts are supplied as necessary.

## DECISION

### I.

#### Motion to Dismiss

Brown argues the trial court erred in denying his motion to dismiss the charges against him based on his assertion that he could not justly be prosecuted because he would be denied his constitutional and statu-

tory rights to an appeal from an adverse judgment based on his allegations that all members of the Indiana Supreme Court, the Court of Appeals, and the Tax Court are prejudiced against him. In a similar vein, Brown has filed a motion in this Court requesting that all of Indiana's appellate judges recuse themselves based upon their alleged prejudice against him.[1] Brown asserts that all of Indiana's appellate judges are prejudiced against him on the basis of two orders issued by the supreme court which ultimately prohibited him from exercising any control over the operations of the Clerk's office. These orders were issued "after consultation with the Indiana Court of Appeals and the Indiana Tax Court ... with the agreement of all three courts." The pertinent part of the second order reads as follows:

> The Indiana Supreme Court today learned of the indictment of Dwayne M. Brown, Clerk of the Indiana Supreme Court, Court of Appeals and Tax Court. He is charged with seven counts of ghost employment. The charges arise from his alleged assignment of Clerk's Office employees to tasks unrelated to his or their official duties.

> Ghost employment is a class D felony. Ind.Code 35–44–2–4. These substantial charges allege a misappropriation of the personnel necessary to effective processing of the appeals which individual litigants bring before these courts. These charges represent a clear and present danger to the integrity of that process.

Additionally, Brown alleges prejudice based on the following public statements made by the Chief Justice:

> Although the Clerk is not an employee of the Court [but] rather an elected official elected by the public, he is nevertheless a part of the judicial department of government. The Court takes this as a serious matter that we need to inquire about. I

expect that we will spend the next several days accumulating what we can by way of evidence and [assessing] the legal framework in which this has alleged to have occurred and make some decision about whether there is any action the Court can or ought to take.

\* \* \* \* \* \* ·

We take these claims to be very serious and distressing, especially the sexual harassment claims. [We are] concerned about the kind of allegations that have been made. Even though the Clerk is not an employee, it is still part of the judicial system, and we have a responsibility for seeing to it that the judicial system is run in the best way we can.

\* \* \* \* \* \*

There are no specific rules barring the Clerk from doing outside legal work, however, the job of Clerk has always been considered full-time employment. The notion that anyone could treat that job as part-time employment never entered into anyone's consideration. [Brown alleges that the Chief Justice went on to suggest that an ethical problem could arise should one of Brown's private law clients file an appeal in the Clerk's office.]

\* \* \* \* \* \*

[After the Supreme Court issued its order prohibiting Brown from exercising control over the Clerk's office, the Chief Justice stated]:

Obviously, if he needs to come into the Clerk's office for any personal reasons—to obtain possessions that are his own in his office—that will be worked out.... Whether he will be permitted there or not will depend on why he needs to be there, and that will be decided on a day to day basis. We expect this will not be a problem in light of the fact that he largely has

---

**1.** Brown suggests that an acceptable three-judge panel could be formed from the two justices of the supreme court and the one judge from our court who have taken office since the date the supreme court enjoined Brown from participating in the operations of the Clerk's office. Brown cites no authority, nor are we aware of any, to support the proposition that this court may form a panel from a combination of judges from the two levels of Indiana's appellate courts. Moreover, such an arrangement would diminish Brown's due process rights by compromising his ability to petition for transfer from an adverse decision of this court. Accordingly, Brown's motion to have a panel formed from both levels of the appellate judiciary is denied.

not been present in the office over the last several months.

■ Judges have a duty to promote public confidence in the impartiality of the judiciary. Ind.Judicial Conduct Canon 2; *Tyson v. State*, 622 N.E.2d 457, 459 (Ind. 1993). A judge should recuse himself under circumstances in which a reasonable person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. *Id.* Accordingly, even the appearance of partiality requires recusal. *Thakkar v. State*, 644 N.E.2d 609, 612 (Ind.Ct.App.1994). The facial expressions, body language, and oral communications of a judge can result in the appearance of judicial bias requiring recusal. Jud.Canon 3(B)(5). Nevertheless, the law presumes that judges are not biased or prejudiced. *Terry v. State*, 602 N.E.2d 535, 540 (Ind.Ct. App.1992). Adverse rulings and findings do not, in and of themselves, establish a judge's bias or prejudice. *Id.* Additionally, the rule of necessity provides that, in order that the law is not powerless to act, an otherwise disqualified judge may nevertheless preside over a case if there is no sufficient replacement. *Adkins v. City of Tell City*, 625 N.E.2d 1298, 1304 (Ind.Ct.App.1993).

■ In the present case, the orders entered by the supreme court and the statements made by the Chief Justice pertain to the orderly operation of the Clerk's office. None of the facts and circumstances involved provide a reasonable basis to support Brown's allegations that any, much less all, of the judges comprising the Indiana appellate judiciary are prejudiced against him. Brown has not made the requisite showing of even the appearance of partiality.

Therefore, Brown has failed to establish that all Indiana appellate judges must, as a matter of law, recuse themselves from the case at bar. Moreover, we cannot conclude that the law would be powerless to impose criminal sanctions upon the felonious conduct of a former clerk of the state appellate courts simply because that person's appeal must necessarily be heard by that same appellate judiciary. Therefore, the trial court did not err in denying Brown's motion to dismiss the indictment against him, nor are all members of the Indiana appellate judiciary required to recuse themselves.

## II.

### *Sufficiency*

Brown analyzes the evidence in the light most favorable to himself to support his argument that the evidence is insufficient to support his convictions. Brown points out that the employee who attended "The Pelican Brief" with him paid for the tickets, and Brown and she returned to the office immediately after the movie was over. Brown asserts that the time devoted by state employees during office hours on his political activities was not as substantial as the State had asserted. Brown argues that the employee who attended his fund raiser as a hostess did so as an independent contractor for $175.00 (3.5 hours × $50.00 per hour). Brown asserts that he had instructed this employee to pay the money back to the State (although she did not). Finally, Brown argues that the trip to Monroe County involved official state business because they had also paid a visit upon the Clerk of the Monroe Circuit Court before attending the luncheon. Finally, Brown argues that the State failed to prove that Marion County was the proper venue in which to bring the count of the indictment involving the trip to Monroe County.

■ The appellate standard of reviewing the sufficiency of evidence is well-settled. The reviewing court will neither reweigh the evidence nor resolve questions of credibility, but will look only to the evidence most favorable to the judgment, along with all reasonable inferences to be drawn therefrom. *Collins v. State*, 464 N.E.2d 1286, 1288 (Ind. 1984). If, from that perspective, the court finds sufficient evidence of probative value from which a reasonable trier of fact could have concluded that the defendant was guilty beyond a reasonable doubt, the conviction will be affirmed. *Id.* It is for the fact-finder to resolve conflicts in the evidence and determine which witnesses to believe. *Marshall v. State*, 621 N.E.2d 308, 320 (Ind.1993). The prosecution of a crime which consists of a series of events, which were begun in one

county and completed in another, may appropriately be venued in the county where the crime originated. *Davis v. State*, 520 N.E.2d 1271, 1273–74 (Ind.1988).

▇▇▇ Brown's argument is merely an invitation to reweigh the evidence. Moreover, Brown's interpretation of the evidence does not, for the most part, exonerate him, but merely tends to minimize the extent or severity of his wrongdoing. Marion County was an appropriate venue for the charge pertaining to the trip to Monroe County because Brown directed state employees in Marion County to accompany him on that trip. Accordingly, the evidence as set out in the FACTS section is sufficient to sustain Brown's convictions.

## III.

### *Uncharged Misconduct Evidence*

The State introduced evidence of several other incidents which could have constituted ghost employment. The additional incidents included 1) Brown's ordering a state employee to type envelopes to be used for political fund raising, 2) Brown's direction of state employees to attend certain meetings with other political figures, and 3) Brown's direction of a state employee to make phone calls to research the issue of negative campaigning. Brown argues that the admission of the evidence of these uncharged acts violated Indiana Evidence Rule 404(b) which reads:

> **Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . .

The State posits that the evidence of Brown's other acts of misconduct was admissible to rebut his claim that his conduct was the result of innocent mistake—that he had not knowingly or intentionally misused state employees. We agree with the State.

▇▇▇ In *Poindexter v. State*, 664 N.E.2d 398 (Ind.Ct.App.1996), we stated:

> Whenever the State attempts to introduce evidence of instances of the defendant's uncharged misconduct, the trial court must look to see whether that evidence is offered to prove something other than the defendant's bad character or propensity to commit the charged crime. If the evidence is offered only to produce the "forbidden inference," that is, that the defendant had engaged in other, uncharged misconduct and that the charged conduct was in conformity with the uncharged misconduct, then the evidence is inadmissible. The analysis of admissibility under Evid.R. 404(b) necessarily incorporates the Evid.R. 403 balancing test [which] reads:

>> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

> The Evid.R. 403 balancing test must be employed because, even if the evidence has some probative value, it might unfairly affect the outcome of the trial and thus violate the defendant's constitutional due process right to a fair trial. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission and its ruling will be reviewed only for an abuse of discretion.

*Id.* at 400 (Citations omitted). In *Poindexter*, we determined that the State was appropriately permitted to rebut a mother's self-defense claim with evidence that she had previously beaten her child. *Id.* at 401. Similarly, in *Clemens v. State*, 610 N.E.2d 236, 242 (Ind.1993), our supreme court held that the evidence that defendant had beaten one of his twin sons in the past was admissible to rebut the defendant's claim that the injuries suffered by the other son were accidental.

▇▇▇ From an examination of Brown's opening argument, as well as the general tenor of his defense throughout the trial, it is abundantly clear that Brown's defensive strategy was an attempt to show that his

conduct was the product of youth and inexperience—that he was prone to make innocent mistakes. The defense sought to establish Brown's good intentions for improving the service provided by the Clerk's office, while cutting the cost to the taxpayers. Also, the defense portrayed Brown as a leader committed to the political education and advancement of the younger, less-experienced members of his staff.

Under these circumstances, the trial court abused no discretion in permitting the State to introduce evidence of other alleged incidents of ghost employment to demonstrate that Brown, rather than making a few honest mistakes, had engaged in a deliberate, intentional, on-going scheme to misuse state resources in the advancement of his political ambitions. Moreover, we cannot conclude that the trial court erred in determining that the probative value of this evidence was not substantially outweighed by the risk of unfair prejudice. Therefore, we find no error.

Brown argues that the Court permitted a certain witness to testify regarding other instances of misconduct despite the State's failure to list this witness and the substance of her testimony on its notice. Evid.R. 404(b), requires the State, upon request, to provide the defendant with reasonable, pretrial notice of the general nature of any evidence of uncharged misconduct it intends to introduce at trial. The testimony that Brown challenges involve statements he allegedly made and reads as follows:

Just run my office. I'm out of the office a lot, I'm campaigning.

\*     \*     \*     \*     \*     \*

Prisoners don't vote.

\*     \*     \*     \*     \*     \*

[The State's witness testified]: [Brown] said to me that he was an attorney, he knew the laws, he knew how he could and could not use his staff, and I was not to worry about that.

Campaigning by an elected official seeking reelection or another office cannot appropriately be characterized as misconduct. Similarly, an attorney's assertion that he knows the law is not misconduct. Thus, these challenged statements are not objectionable under Evid.R. 404(b) because they do not involve misconduct. The other statement Brown allegedly made reads as follows:

[The State employee who was the subject of the first three counts of the indictment] does not need to be trained, she's not going to be working in this office, she's running my campaign.

This statement directly relates to charged felonies. Therefore, it is not objectionable under Evid.R. 404(b) as evidence of uncharged misconduct.

■■■■■ In any event, to obtain reversal based upon the erroneous admission of evidence of uncharged misconduct, the defendant must show prejudice to his substantive rights. *Hardin v. State*, 611 N.E.2d 123, 132 (Ind.1993). Moreover, prejudice cannot ordinarily be established upon the basis of erroneously admitted evidence which is cumulative of properly admitted evidence having the same probative value. *Davidson v. State*, 558 N.E.2d 1077, 1089 (Ind.1990). The evidence about which Brown complains is merely cumulative of properly admitted evidence having the same probative value. Therefore, Brown cannot establish prejudice, and any error in the admission of the evidence is harmless.

■■■ Finally, Brown argues the trial court erred in admitting a letter written to Brown by one of the State's witnesses in which Brown was quoted as having said, "Everyone has his price." The State sought to have the letter introduced into evidence only after Brown had questioned its author during cross-examination regarding its contents. Brown cannot complain because he opened the door to the admission of the letter. *See Caley v. State*, 650 N.E.2d 54, 56 (Ind.Ct. App.1995) (Photographs which otherwise may not have been admissible were properly admitted after defendant had opened the door during the cross-examination of a State's witness by introducing evidence which referred to the photographs), *trans. denied.*

## IV.

### *Equal Protection—Peremptory Challenge*

Brown, an African–American, asserts that he was denied the right to a trial by a fair

and impartial jury because the State used a peremptory challenge to exclude a black juror. Brown failed to make a record of the races represented by the other potential jurors, including the ones who eventually sat on the jury. In response to Brown's objection to the striking of the black juror, the deputy prosecutor stated:

> ... when I attempted to engage [the juror] in a question/answer session, she was very withdrawn and very silent. And, when [Brown's attorney] engaged her in questioning, she became very animated and very loudly stated that she would not want to send an innocent man to jail. And therefore, the State is of the position that [this juror] is a more likely juror to exercise sympathy and not listen to the evidence in this case. And we feel that is a race-neutral basis for the exercising of a peremptory challenge.

The trial court overruled Brown's objection to the State's exercise of its peremptory challenge finding that Brown had not shown purposeful racial discrimination.

As noted in *Chubb v. State*, 640 N.E.2d 44 (Ind.1994):

> With respect to prosecutorial exercise of peremptory challenges, the Court has adopted the requirements for purposeful racial discrimination enunciated by the United States Supreme Court in *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. For a defendant to establish a *prima facie* case of purposeful racial discrimination in the selection of a jury, it must be shown that (1) the defendant is a member of a cognizable racial group; (2) the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) the facts and any other relevant circumstance of the defendant's case raise an inference that the prosecutor used that practice to exclude venire [persons] from the jury due to their race. Once such a *prima facie* showing has been established, the burden shifts to the State to present an explanation for challenging such jurors. Although the prosecutor's explanation must relate to the particular case to be tried, it need not rise to the level justifying

exercise of a challenge for cause. It is then the trial court's duty to determine whether the defendant has established purposeful discrimination. Here, the trial court's finding is accorded great deference. *Id.* at 49 (Citations omitted). The prosecutor's explanation for exercising a peremptory challenge need not be particularly persuasive so long as it constitutes a facially valid reason for excluding the juror in question. *Ross v. State*, 665 N.E.2d 599, 602 (Ind.Ct.App.1996). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral because an experienced trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses derived from a juror's responses, looks, and gestures. *Id.* at 602–03.

Based on the above, we cannot conclude that the trial court erred in determining that the juror had been struck for race-neutral reasons. Therefore, we find no error.

## V.

### Other Jury Issues

Brown asserts that the trial court erred in denying his motions to 1) increase the number of peremptory challenges, 2) sequester the jury, and 3) increase the number of jurors from six to twelve. Brown asserts that these measures would have mitigated the effect of unfair pre-trial publicity and provided a remedy for the trial court's alleged prejudice against him. Brown argues that he chose not to seek a change of venue, despite the negative pre-trial publicity, because he perceived that the racial composition of the counties surrounding Marion County would be unfavorable.

When the most serious crime a defendant is charged with is a class D felony, the jury shall consist of six qualified jurors and the defendant will be afforded five peremptory challenges. Ind.Code 35–37–1–1(b)(2); 35–37–1–3(c). A criminal defendant's right to a trial by jury does not include the right to by tried by a twelve-person jury; and, the statutory provision for a six-

person jury in class D felony prosecutions satisfies both the United States and Indiana constitutions. *Johnson v. State,* 654 N.E.2d 20, 22 (Ind.Ct.App.1995) (Number of jurors is largely relegated to the legislature), *trans. denied.* Whether to provide the defendant with additional peremptory challenges is a matter within the trial court's sound discretion. *Evans v. State,* 563 N.E.2d 1251, 1260 (Ind.1990). The trial court may order that the jury be sequestered in order to assure a fair trial. I.C. 35–37–2–4(b). In non-capital cases, jury sequestration is a matter of trial court discretion. *Clemens v. State,* 610 N.E.2d 236, 241 (Ind.1993). In order to show error in the denial of a motion to sequester the jury, the defendant must demonstrate that jurors were actually exposed to prejudicial publicity. *Id.* Before a defendant is entitled to reversal on appeal, he must affirmatively show that there was error prejudicial to his substantial rights. *Tyson v. State,* 619 N.E.2d 276, 300 (Ind.Ct.App. 1993), *trans. denied, cert. denied,* 510 U.S. 1176, 114 S.Ct. 1216, 127 L.Ed.2d 562.

Brown has not shown that the denial of the motions in question prejudiced his substantial rights. The denial of the motions was an appropriate exercise of trial court discretion. Therefore, we find no error.

## VI.

### *Sentencing*

Brown argues that the enhanced, concurrent, three-year sentences were manifestly unreasonable in light of the nature of the offense and the character of the offender. In the present case, the trial court found that the aggravating circumstances, which included the substantial pattern of ghost employment activities over time, outweighed the mitigating circumstances, which included Brown's young age and lack of criminal history. The trial court did state on the record that the sentences would be suspended due to the genuine remorse displayed by Brown.

■ The standard of reviewing a sentence is well-settled. Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. *Sims v.*

*State,* 585 N.E.2d 271, 272 (Ind.1992). It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. *Id.* A sentence authorized by statute will not be revised unless the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17(B). The trial court's statement must identify all significant aggravating and mitigating circumstances, include a specific reason why each circumstance is aggravating or mitigating, and weigh mitigating circumstances against the aggravating factors. *Boyd v. State,* 564 N.E.2d 519, 524–525 (Ind.1991). Only one valid aggravator is needed to sustain an enhanced sentence. *Reaves v. State,* 586 N.E.2d 847, 852 (Ind. 1992). The trial court is under no obligation to explain its decision not to find a mitigating factor or to assign any particular weight to the defendant's asserted mitigating factors. *Carter v. State,* 560 N.E.2d 687, 690 (Ind.Ct. App.1990), *trans. denied.* The trial court may consider the nature of the crime and the manner in which it was committed as aggravating factors in enhancing the presumptive sentence. *Brim v. State,* 624 N.E.2d 27, 38 (Ind.Ct.App.1993), *trans. denied.*

■ The three-year, concurrent, suspended sentences imposed in the present case upon seven felony convictions do not impress us as manifestly unreasonable. The sentencing court engaged in the required evaluative processes by weighing the aggravating circumstances against the mitigating circumstances. We cannot conclude that the trial court abused discretion by enhancing Brown's sentences. Therefore, we find no error.

Judgment affirmed.

NAJAM and RILEY, JJ., concur.