## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 04 2019, 8:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jaquan Davis,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 4, 2019

Court of Appeals Case No.
19A-CR-333

Appeal from the Marion Superior Court

The Honorable Marc Rothenberg, Judge

The Honorable Shatrese Flowers, Judge

Trial Court Cause No.
49G02-1509-F3-32940

**Tavitas, Judge.**

# Case Summary

Jaquan Davis appeals his convictions for armed robbery, a Level 3 felony, and battery by means of a deadly weapon, a Level 5 felony. We affirm.

# Issue

Davis raises three issues on appeal, which we consolidate and restate as whether the trial court properly admitted a fingerprint examiner's opinion that Davis was the source of a latent palm print recovered from the crime scene.

# Facts

On September 5, 2015, as cashier Carmen Hernandez-Saucedo worked in Obadiah's Smoke Shop ("the store") in Indianapolis, a tall, African-American man in a blue shirt approached the cash register to make his second purchase of the day. Hernandez-Saucedo went behind the counter to collect payment, and the man repeatedly struck Hernandez-Saucedo's face, took the contents of the cash register, and pointed a gun at Hernandez-Saucedo. When Hernandez-Saucedo attempted to flee, the man shot her in the thigh and fled the store. After the robbery, Hernandez-Saucedo saw the man drive away in a green vehicle with gold hubcaps.

[4]    Video surveillance footage[1] revealed that the man carried what appeared to be a .380 caliber handgun, wore black Jordan 13 sneakers with red soles, and touched the cash register and the inside surface of the front door of the store. Indianapolis Metropolitan Police Department Detective Jerry Townsend obtained descriptions of the man and the green car from Hernandez-Saucedo; and still photographs from the surveillance footage yielded a license plate number for the green car. The license plate number was associated with a green 1994 Pontiac Bonneville that was registered to Demetrius Muhammad.[2]

[5]    Officer David Waterman, an evidence technician for IMPD, lifted four latent prints[3] from the store and delivered them to IMPD latent fingerprint examiner, Rochella O'Neil. Of two palm prints that were recovered from the door of the store, only one was usable. The usable palm print ("the palm print") was comprised mostly of friction ridge skin and was an "excellent quality print" because of its size and "the amount of minutiae that was available." Tr. Vol.

---

[1] Surveillance cameras outside the store captured the following: (1) a green vehicle with gold hubcaps drove past the store before the robbery and traveled from the left to the right side of the camera frame; (2) a man soon entered the camera frame from the right side of the camera frame; and (3) after the robbery, the man ran out of the store toward the right side of the camera frame. Surveillance footage from a different angle also captured: (1) the green vehicle before the robbery; (2) the man's exit from the green vehicle before he entered the store; and (3) the man as he ran from the store, entered the car, and drove away.

[2] The vehicle owner's name is spelled differently throughout the record; we will employ "Muhammad" here. During the underlying investigation, IMPD eliminated Muhammad as a suspect in the robbery. *See* Conf. App. Vol. II pp. 23-24.

[3] "A latent print is a reproduction of friction ridge skin that's left on something that has been touched"; "[i]t's not usually visible to the naked eye"; and [i]t needs to be enhanced with the use of print powders or other latent chemicals." Tr. Vol. II p. 21.

III p. 32. O'Neil processed the palm print through the Automated Fingerprint Identification System ("AFIS")[4] database on September 8, 2015. Although Davis' prints were in the AFIS database at the time, Davis was not—to O'Neil's knowledge—among the candidates generated by AFIS as potential sources of the palm print.

[6] On September 11, 2015, as Detective Townsend drove in the vicinity of Muhammad's address, Detective Townsend observed a green Pontiac Bonneville with gold hubcaps. Detective Townsend watched as the driver—Davis—exited the car and entered an apartment. Davis wore black Jordan 13 sneakers with red soles. IMPD surveilled the apartment, and Davis eventually emerged and drove away in the green Bonneville. The police initiated a lawful traffic stop when Davis failed to use his turn signal. On or about September 12, 2015, the police obtained a search warrant for the apartment. The search yielded a pair of red-soled black Jordan 13 sneakers, ammunition for a .380 caliber handgun, and a blue shirt that resembled the shirt worn by the robber. On September 16, 2015, the State charged Davis with armed robbery, a Level 3 felony; battery by means of a deadly weapon, a Level 5 felony; and carrying a handgun without a license, a Class A misdemeanor.

---

[4] "AFIS is basically a computerized database that is full of fingerprints and palm[print]s. And [ ] it is a tool. We utilize it when we don't have any other means of performing comparisons." Tr. Vol. II pp. 27-28. AFIS "look[s] for the minutiae that [examiners] set [ ] when [ ] looking at the fingerprints" and generates "a list of candidates that we have to manually look at ourselves." *Id*. at 29.

[7] Three years later, the State filed a motion to fingerprint Davis on October 27, 2018 and notified counsel for Davis that the State intended to analyze the palm print. The State requested that O'Neil compare the palm print to Davis' prints from the AFIS database. O'Neil compared the palm print to Davis' prints and concluded that, "in [her] opinion[,]" the palm print from the store "did belong to Jaquan Davis." Tr. Vol. III p. 36. O'Neil did not compare the palm print to any other offenders' prints because she "[di]d not expect to find th[e] [same] level of corresponding detail in another source[,]" because of the size and detailed minutiae present on the palm print, and because, based on her training and experience, no two people present identical friction ridge detail on their hands. *Id*. at 37.

[8] On October 29, 2018, Davis filed a motion in limine, wherein Davis asserted that "the methodology and techniques used in latent print analysis" are not "based on reliable scientific principles[.]" Conf. App. Vol. II p. 177. In addition to arguing that latent print analysis was unreliable, Davis also argued that any opinion, "even if based on reliable principles," would violate Evidence Rule 403. *Id*. at 178.

[9] On November 21, 2018, the trial court conducted a hearing regarding, among other things, the admissibility of the palm print. Counsel for Davis objected to the palm print evidence on the ground that the State analyzed the palm print and identified it as Davis' palm print three years after the palm print was collected and one week before Davis' jury trial. *See* Tr. Vol. II p. 13. Defense

counsel also advised the trial court that a scheduled deposition of O'Neil was cancelled due to defense counsel's illness.

[10] The State countered that "once the State became aware that there was a print that had not been compared to Mr. Davis' prints, [the State] immediately notified Defense counsel, immediately requested that [the palm print] be examined by Ms. O'Neil, and then promptly turned over the identification report[.]" *Id*. at 14. Counsel for the State added that, although defense counsel was unable to conduct O'Neil's deposition, defense counsel was "able to email Ms. O'Neil questions and receive responses [.]" *Id*. Over Davis' objection, the trial court found that the palm print was admissible, and that defense counsel had sufficient time to review the evidence.

[11] Davis was tried by a jury on November 29, 2018. That morning, O'Neil took an inked palm print, comprised of mostly friction ridge skin, from Davis. During its case in chief, the State called O'Neil to testify. O'Neil testified at length regarding her training and her twenty-two years of experience with IMPD's fingerprint identification unit and fourteen and one-half years of experience with the latent print unit. O'Neil testified further that IMPD's latent print examiners each have a minimum of fourteen years of professional experience and follow the ACE-V[5] methodology—which is endorsed by the International Association for Identification as the accepted standard

---

[5] "ACE-V" stands for "Analysis, Comparison, Evaluation, and Verification." Tr. Vol. III p. 21.

methodology for performing fingerprint comparisons. O'Neil testified that, in her role as a latent print examiner, she "perform[s] . . . analysis, comparison, evaluation and verification on any friction ridge detail that [comes] to [IMPD] on latent cards or digital photographs that are recovered from crime scene[s.]" *Id*. at 18.

[12]   Regarding the ACE-V methodology, O'Neil testified further:

> Q: Okay. Now, let's talk about the process in comparing that latent print to known prints or exemplars. What is the procedure that you follow?
>
> A: We follow the ACE-V Methodology. ACE-V stands for Analysis, Comparison, Evaluation, and Verification.
>
> Basically during the Analysis part, [ ] we [ ] receive the evidence and we examine it to determine whether or not there's any friction ridge detail present on that evidence. We're also looking at the quality to try to make a determination as to whether or not we can make a comparison. If we believe we can make a comparison, then we move to the comparison stage and we place the unknown latent print next to a known exemplar under magnification and we look at the unique identification characteristics as well as the unit relationship between those characteristics.
>
> While we're doing that, we move to the evaluation stage which is where we form an opinion as to whether or not we believe there were dissimilarities which would invoke an exclusion or if we found enough [ ] correspondence between the minutiae to make an identification.

A. And then we move to the verification stage. Once we form our opinions as to whether or not we believe there was an identification or an exclusion, then we move to the verification stage. And that's where we hand our entire case over to another co-worker or a supervisor who re-works it to make sure they come to the same conclusion.

*See* Tr. Vol. II pp. 21-22. O'Neil testified further that, in Davis' case, she: (1) received a request from the prosecutor to compare the palm print to Davis' prints; (2) conducted the analysis "with ACE-V"; and (3) concluded that the latent palm print matched Davis' prints because of "an overwhelming amount of minutiae [ ] that [O'Neil] would not expect to find repeated in another source."[6] *Id*. at 49.

[13] When the State asked O'Neil to opine on the source of the palm print, after O'Neil compared the palm print to Davis' prints, defense counsel objected as follows: "Judge, at this point I'm going to object to this witness testifying to the print matching my client under Rule 702 and [based upon] the prior hearing

---

[6] O'Neil testified further that AFIS likely did not identify Davis as a potential source of the palm print because the palm print from the crime scene included more friction ridge skin than Davis' AFIS palm print, which included "more of the smooth skin [of his palm]." *Id*. at 53. During O'Neil's testimony, counsel for Davis moved to exclude anticipated State's Exhibit 2 and stated, "So we would just like to note for the record that this document which will be admitted during the hearing, this is the very first time Defense has seen it." Tr. Vol. II p. 54. Counsel for the State replied that State's Exhibit 2 was generated "in preparation for [the] hearing[,]" the State and O'Neil generated State's Exhibit 2 to answer [ ] why perhaps Mr. Davis' print did not appear [ ] as an AFIS candidate." *Id*. The trial court admitted Exhibit 2 over defense counsel's objections.

that we had on this matter." Tr. Vol. II p. 33. The trial court overruled the objection and incorporated its earlier findings. O'Neil then testified, "In my opinion, the latent print that was left on [ ] the entry door inside was made by Mr. Jaquan Davis, specifically[,] his writer's palm."[7] *Id.* at 34.

[14] At the close of the evidence, the jury convicted Davis on all counts. At Davis' sentencing hearing on January 11, 2019, the trial court sentenced him to eleven years for armed robbery, a Level 3 felony, and three years for battery by means of a deadly weapon, a Level 5 felony, with the sentences to be served concurrently.[8] Davis now appeals.

## Analysis

[15] Davis argues that the trial court abused its discretion in admitting O'Neil's identification because O'Neil failed to: (1) "explain[ ] the basis for her conclusions"; and (2) "show[ ] if or how the ACE-V method was reliably applied[.]" Davis' Br. p. 27. The State counters that this issue is waived because Davis is making a different argument on appeal than he made at trial.

[16] Davis objected below to O'Neil's identification on the ground that the ACE-V methodology is not based on reliable scientific principles. On appeal, Davis implicitly accepts the validity of ACE-V and asserts that O'Neil failed to "show [ ] if or how the ACE-V method was reliably applied[.]" Davis' Br. p. 27. We

---

[7] The "writer's palm" is the side of the hand that makes contact with paper when a writer writes.

[8] Davis' conviction for carrying a handgun without a license was vacated on double jeopardy grounds.

agree with the State that this issue is waived. *See Pigg v. State*, 929 N.E.2d 799, 803 (Ind. Ct. App 2010) (claims are generally waived if raised for the first time on appeal), *trans. denied*.

[17] Waiver notwithstanding, we address the merits of Davis' argument that the trial court abused its discretion when it admitted O'Neil's identification of Davis as the source of the palm print. Absent an abuse of discretion, we will not disturb a trial court's determination that a witness is qualified to testify as an expert and render an expert opinion. *Ross v. State*, 665 N.E.2d 599 (Ind. Ct. App. 1996). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[18] Indiana Evidence Rule 702 provides:

> (a) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.
>
> (b) Expert scientific testimony is admissible only if the court is satisfied that the expert testimony rests upon reliable scientific principles.

[19] In *Burnett v. State*, 815 N.E.2d 201, 209 (Ind. Ct. App. 2004), we held:

> ACE-V methodology is generally accepted by the [International Association for Identification], an international organization in the field. [[ ] [Fingerprint experts in several different states,

including Indiana, Ohio, Illinois, and Michigan, use the ACE-V method for fingerprint identification. Thus, the State established that the ACE-V methodology is generally accepted within [the latent fingerprint examiner-expert]'s relevant field of study and that it is more likely than not that the scientific principles upon which the testimony rests are reliable.

*Burnett v. State*, 815 N.E.2d 201, 209 (Ind. Ct. App. 2004). Thus, Davis' claim that ACE-V methodology is not based on reliable scientific principles fails.

[20]    Moreover, O'Neil testified regarding: (1) her extensive professional training and experience; (2) IMPD's policy of training its print examiners to employ the ACE-V methodology; (3) the detailed steps of the ACE-V analytical process; and (4) O'Neil's utilization of the ACE-V methodology when she identified Davis as the source of the palm print. Based on the foregoing, the trial court did not abuse its discretion by admitting O'Neil's expert testimony pursuant to Rule 702. *See Bond v. State*, 925 N.E.2d 773, 781-82 (Ind. Ct. App. 2010) ("[Examiner] explained the steps involved in the ACE-V methodology and testified that she used ACE-V[.] [ ] In light of [examiner's] testimony—along with the established reliability of the ACE-V protocol and [examiner's] qualifications as an expert witness—we cannot say that the trial court erred by finding that the ACE-V method was applied and that [examiner's] opinion was admissible under Rule 702.").

[21]    Moreover, the State presented extensive evidence regarding O'Neil's application of ACE-V methodology and techniques. Counsel for Davis cross-examined O'Neil at length. Indiana does not require a specific "'test' or set of

'prongs' which must be considered in order to satisfy Indiana Evidence Rule 702(b)." *See Alcantar v. State*, 70 N.E.3d 353, 359 (Ind. Ct. App. 2016) (quoting *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind. 1997)). We, thus, find the dispute here goes to the weight attributed to the ACE-V methodology and the conclusions that O'Neil reached in reliance on ACE-V, and not to the admissibility of O'Neil's testimony as to ACE-V. *See Alcantar*, 70 N.E.3d at 359.

## Conclusion

[22] The trial court did not abuse its discretion in admitting O'Neil's identification of Davis as the source of the palm print pursuant to Indiana Evidence Rule 702. We affirm.

[23] Affirmed.

Brown, J., and Altice, J., concur.